Colonel Duncan S. SOMERVILLE and Mrs. Virginia W. Somerville, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 205–83T.

United States Claims Court.

Sept. 24, 1987.

Herbert L. Camp, Washington, D.C., for plaintiffs.

William K. Drew, with whom were Asst. Atty. Gen. Glenn L. Archer, Mildred L. Seidman, and Gerald B. Leedom, for defendant.

## OPINION

SMITH, Chief Judge.

This case concerns a tax refund claim for the years of 1978 and 1979. It comes before this court on parties' cross-motions for summary judgment. It involves a dispute over the interpretation of the definition of "acquire" within the meaning of I.R.C. § 333(e) (1978).

Because this case was one of first impression, its disposition was suspended at one point awaiting the outcome of a Tax Court case which involved precisely the same question on the meaning of "acquire" as is involved here. *See Knowlton v. Commissioner*, 84 T.C. 160 (1985), aff'd, 791 F.2d 1506 (11th Cir.1986). That Tax Court case was subsequently decided and affirmed in defendant's favor. Plaintiffs concede that the Tax Court's decision is indistinguishable from this case and is contrary to their position but contend that the Tax Court ruling is erroneous and thus should not be followed.

Neither party contends that there is any dispute as to material fact and the parties have accordingly filed a joint stipulation. Having heard oral argument and having reviewed all briefs, this court will grant defendant's motion for summary judgment, deny plaintiffs' motion for summary judgment, and order plaintiffs' case dismissed. While this court believes that the holding in *Knowlton v. Commissioner* is correct, this court reaches its decision on different grounds.

### Facts

Prior to June of 1978, plaintiffs were shareholders in the Dunmovin Corporation; a corporation which was a personal holding company as defined in the tax code. *See generally* I.R.C. § 542 (1978). During that time, Dunmovin Corporation (Dunmovin) owned the stock of various corporations including General Motors Corporation (GM).

Prior to 1954, Dunmovin only owned a small number of shares of GM stock. Yet, at the same time, Dunmovin had a large indirect interest in GM which Dunmovin held through its large holdings of E.I. du Pont de Nemours & Co. (du Pont) stock. From 1930 to 1949, Dunmovin made several acquisitions of du Pont stock amounting to 86,000 shares. Du Pont meanwhile had acquired numerous shares of GM stock throughout this same period until some time after 1954.

As a result of two anti-trust decisions by the United States Supreme Court, *see United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957); *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961), Dunmovin's direct ownership of GM stock vastly increased. In accordance with these two decisions, du Pont was forced to divest itself of its GM stock and carried out this divestiture in 1962, 1964, and 1965. The divestiture was performed by distributing the stock in the form of a dividend to du Pont's shareholders, one of which was Dunmovin.

The dividend distribution of GM stock was a taxable event, *see* I.R.C. § 301 (1962), but Dunmovin received an 85% deduction because the dividend transfer was from a domestic corporation (du Pont) to an unrelated corporation (Dunmovin.) *See* I.R.C. § 243(a) (1962). This exchange had no effect on the basis of GM stock, *see generally* I.R.C. § 301(d)(2) (1962), nor did it effect its holding period. *See generally* I.R.C. § 1223(2) (1962). Therefore, even though Dunmovin was taxed on its receipt of the GM stock dividend, Dunmovin's basis and holding period in the GM stock was

the same as the basis and holding period by du Pont.

Dunmovin held the GM stock until June of 1978 when it liquidated pursuant to the election provided under I.R.C. § 333 (1978). Under the terms of the liquidation, plaintiffs redeemed all of their shares of Dunmovin stock. In return, plaintiffs received cash and marketable securities. The marketable securities received included 27,400 shares of GM stock.

The relevant history of ownership for the 27,400 GM shares which plaintiffs received in Dunmovin's liquidation is divided into three groups. The first group of stock was directly purchased by Dunmovin prior to 1954 and amounted to 144 shares. The second group of stock was distributed to Dunmovin in the 1960's du Pont divestitures and was bought by du Pont after 1954; this second group amounted to 1,094 shares. The third group of stock shares was also distributed to Dunmovin in the early 1960's du Pont divestitures but was bought by du Pont before 1954; this last group amounted to 26,162 shares.

Plaintiffs and defendant do not disagree on the taxability of these first two groups of stock. The first group of 144 shares of GM stock was directly purchased by Dunmovin prior to 1954 and therefore is not taxable. See I.R.C. § 333(e)(2) (1978). The second group of stock obtained by Dunmovin from the GM divestitures was purchased by du Pont after 1954 and thus is considered by both parties to be taxable under capital gain rules. *See id.*

It is the last group of 26,162 shares of GM stock which is in dispute. When plaintiffs initially filed their 1978 tax return[1], they did not include the receipt of these stocks because plaintiffs considered them to have been "acquired" by Dunmovin prior to 1954. The I.R.S. objected to plaintiffs' interpretation of I.R.C. § 333(e)(2) and sent a notice of deficiency to plaintiffs requesting that they include these 26,162 GM shares as capital gain income. Plaintiffs paid the resulting taxes incurred from treating the GM shares as capital gain but

now come before this court requesting relief.

### Discussion

The only point of contention between parties concerns the meaning of "acquire" as defined in the corporate liquidation election of I.R.C. § 333(e)(2). This section pertains to the taxability of stock received by non-corporate shareholders in an I.R.C. § 333 election and requires that:

> there shall be recognized, and treated as short-term or long-term capital gain, as the case may be, so much of ... the gain ... received by him [,the shareholder,] which consists of ... stock or securities acquired by the [liquidating] corporation after December 31, 1953...."

I.R.C. § 333(e)(2).

In this case, the plaintiffs are the non-corporate shareholders; the GM shares are the stock received; and Dunmovin is the liquidating corporation. Thus, plaintiffs' receipt of the 26,162 GM shares should be treated as a capital gain if they were acquired by Dunmovin after December 31, 1953. Conversely, if the GM shares were acquired by Dunmovin prior to 1954, plaintiffs' receipt of the GM stocks should be exempt from tax altogether.

The government contends that the GM stock shares were acquired after December 31, 1953 when du Pont distributed the stock to Dunmovin in the early 1960's. Plaintiffs' position is that Dunmovin acquired the stock as a result of the indirect interest it obtained when du Pont made its purchases prior to 1954. The dividend distributions of the 1960s under plaintiffs' theory should be ignored under I.R.C. § 333(e)(2) because they had no effect on the basis and holding period of the GM stock.

### Meaning of Acquire

The issue of the meaning of acquire under I.R.C. § 333(e)(2) is a narrow one. It is one of first impression in this court and has only been directly addressed in two other decisions.

---

**1.** The 1979 taxable year is also in dispute in this case because the inclusion of stock as capital

gain had the effect of reducing plaintiffs' 1979 carryovers.

The Department of Treasury was the first to make a decision on this matter. *See generally* Rev.Rul. 78–350, 1978–2 C.B. 135. Specifically, it held that the receipt of an I.R.C. § 301 (1970) stock dividend was an acquisition under I.R.C. § 333(e)(2) regardless of whether the dividend effected the stocks' holding period or basis. The problem with giving deference to this revenue ruling, however, is that it was issued in response to this same controversy. Revenue rulings issued under such circumstances are of no weight since the government cannot be allowed to bootstrap its own positions. *See Ludwig v. Commissioner,* 68 T.C. 979, 985 n. 4 (1977); *see also Norfolk Shipbuilding and Drydock Corp. v. United States,* 321 F.Supp. 222, 226 (E.D. Va.1971) (The district court ignored a revenue ruling where it was merely an assessment of the Commissioner's position in that case).

The meaning of acquired under I.R.C. § 333(e)(2) was also addressed by the Tax Court and subsequently affirmed by the Eleventh Circuit Court of Appeals. *Knowlton v. Commissioner,* 84 T.C. 160 (1985), *aff'd,* 791 F.2d 1506 (11th Cir.1986). Yet, this court is not entirely satisfied with the reasoning used in that case nor with the rule that it formulated; a rule which this court believes is too restrictive. *Cf. Knowlton v. Commissioner,* 791 F.2d at 1510, *aff'g,* 84 T.C. at 166, 168 (the Tax Court ruled that the transfer of stock is only not to be recognized as an acquisition under I.R.C. § 333(e)(2) where the transaction was merely a change in the nature or form of the stock).

While this court is not bound by Tax Court precedent, of course, we respect the Tax Court as a sister forum and place significant weight upon its opinions. *See Coleman v. United States Dept. of Justice,* 429 F.Supp. 411, 413 (N.D.Ind.1977); *Alaskan Arctic Gas Pipeline Co. v. United States,* 9 Cl.Ct. 723, 736 (1986). In this case, however, the court has decided not to follow the Tax Court's reasoning in *Knowlton v. Commissioner.*

The term "acquired" is not defined in the Code and should normally be given its ordinary meaning, *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965), especially when that term is "unambiguous on its face." *See United States v. Tunkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). In this situation, the term "acquired" could hardly be described as "unambiguous." It is certainly open to legitimate argument whether an indirect interest in GM was "acquired" by Dunmovin when du Pont made its pre–1954 purchases of GM stock. It is, on the other hand, a credible position that an "acquisition" did not occur until the 1960's when the actual GM stock was received by Dunmovin.

■ Indeed, the receipt of an indirect interest has been held to be a sufficient acquisition under other areas of the Code. *Commissioner v. Seagram & Sons, Inc.,* 394 F.2d 738 (2nd Cir.1968) (the court held that a subsidiary receiving a parent's inventory acquired that inventory under the LIFO method on the date when the inventory was purchased by the parent and not when it was subsequently transferred to the subsidiary); Rev.Rul. 70–565, 1970–2 C.B. 110 (the Treasury Department ruled that a transferee corporation receiving inventory in an I.R.C. § 351 (1954) exchange acquired that inventory under the LIFO method when it was purchased by the transferor and not when it was subsequently transferred under the I.R.C. § 351 exchange). The sufficiency of the receipt of an indirect interest in stock as an acquisition seems even more compelling in light of other language used in I.R.C. § 333(e)(2). This section uses both the words: "receive" and "acquire." In order for the stock to be taxable, the Code requires that the shareholders "receive" the shares from a corporation that had previously "acquired" them. The use of different terminology within the same section of the Code is a strong indication of an intentional differentiation on the part of the drafters. *Lankford v. Law Enforcement Assistance Admin.,* 620 F.2d 35, 36 (4th Cir.1980).

The word "receive" has a narrower definition than the word "acquire." A receipt is a certain type of acquisition, it is an

"acquisition of control in [the] sense of physical dominion or apparent legal power to dispose of property and envisages possession or control as an essential element." Black's Law Dictionary 1140 (5th ed. 1979) (emphasis added and citation omitted). An acquisition, on the other hand, can be a "gain in whatever manner.... and does not necessarily mean that title has passed." *Id.* at 23.

Hence, the purchase of stock by du Pont prior to 1954 could theoretically be considered an acquisition, albeit an indirect one, by Dunmovin within the meaning of I.R.C. § 333(e)(2). The question in this situation then becomes whether the dividend distributions of the early 1960's can be ignored in the contemplation of the Code so that Dunmovin's acquisition of stock can be considered as one and the same with du Pont's acquisition of the stock prior to 1954.

*Legislative History*

Plaintiffs' first argument is based on the legislative history and purpose of the election provided under I.R.C. § 333; an election which allows the shareholders in a liquidation to possibly avoid the full taxability of their received dividends under the normal liquidation provision under I.R.C. § 331. Plaintiffs contend that the intent of this overall election was to promote the liquidation of personal holding companies and that the receipt of stock was only recognized under I.R.C. § 333(e)(2) to serve a limited goal. According to plaintiffs, I.R.C. § 333(e)(2) was mainly directed at taxing cash. Stock became taxable as well to prevent liquidating corporations from easily converting their cash into stock in order to escape the cash limitation of I.R.C. § 333(e). In this case of course, Dunmovin was a personal holding company and no cash to stock conversion occurred. Therefore, if plaintiffs' argument is followed, this court's exclusion of the GM stock shares from tax would further I.R.C. § 333's general purpose of facilitating personal holding liquidations, and such an exclusion would not undermine the cash to stock conversion purpose of I.R.C. § 333(e)(2).

The corporate liquidation election of I.R.C. § 333 has a long history. It was initially enacted in 1938 and was originally contained under I.R.C. § 112(b)(7) (1938). J. Seidman Legislative History of Income Tax Laws 50 (1938). The election was then extended to 1943, reenacted in 1950 through 1953, and subsequently made a permanent part of the 1954 Code. The relevant portion of this corporate liquidation election, presently under I.R.C. § 333(e)(2) and formerly under I.R.C. § 112(b)(7)(E)(ii), has remained completely unchanged except for the timing of its operative date. *Id.*

While it is true that the election of I.R.C. § 333 was principally designed to promote personal holding company liquidation, *see* J. Seidman at 52 (1938) (the election came as a proposed amendment to section 115(c)), this section was intended to promote that end in only a very circumscribed way. The general intention of this election was simply to exclude from tax the unrealized appreciation of assets held by the liquidating corporation. J. Seidman at 1542, 1543. This purpose is not promoted in this case. The GM stocks received by Dunmovin did not have unrealized appreciation. The stock was received in a dividend distribution, a qualified realizable disposition or exchange. *See generally* I.R.C. § 1001(b) (1962).

Plaintiffs' argument concerning the stock exclusion contained under I.R.C. § 333(e)(2) is of little weight. The central support of plaintiffs' argument is supposedly contained in a 1950 Senate Report. S.Rep. No. 2375, 81st Cong., 2d Sess., *reprinted in,* 1950 U.S. Code Cong. & Admin. News 3053, 3118 (1950). However, the language referred to only discusses the need to move the effective date from December 31, 1950 back to August 15, 1950 so that corporations would not change their positions in anticipation of legislative action. *Id.* at 63. The language does not discuss the issue of cash-to-stock conversion, as plaintiffs suggest.

Plaintiffs cite a general counsel memoranda and a revenue ruling as additional support. *See generally* Rev.Rul. 76–

392, 1976–2 C.B. 249; Gen. Couns. Mem. 36,743 (May 26, 1976). The problem with these two decisions though is that they are insufficient standing alone. General Counsel memoranda are merely internal documents and do not have the force of law. *Northern Ill. Gas. Co. v. United States,* 560 F.Supp. 928, 929 (N.D.Ill.1983), *aff'd on other grounds,* 743 F.2d 539 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985). Revenue rulings are also not binding on this court but should be given deference when the reasoning is persuasive and thorough. *See Columbus Fruit and Vegetable Cooperative Assoc., Inc. v. United States,* 7 Cl.Ct. 561, 565 (1985). The Revenue ruling 76–392, cited by plaintiffs, has numerous failings. It provides no authoritative support for its position that I.R.C. § 333(e)(2) was designed to prevent cash to stock conversion. The revenue ruling was not even directed toward I.R.C. § 333(e)(2); instead, its position on I.R.C. § 333(e)(2) was only used as reasoning to support its holding on another area of the Code. Lastly, this court, upon its own independent review of this section's legislative history dating back to 1938, has found no evidence of revenue ruling 76–392's interpretation on I.R.C. § 333(e)(2) whatsoever.

Despite the lack of support for plaintiffs' position under the legislative history and purpose of I.R.C. § 333, this court agrees with plaintiffs that the term "acquire" does not include all transfers of stock. The regulations, in fact, bear this out; they specifically exclude transfers which are the replacement of lost certificates or are the mere conversion of stocks into larger or smaller denominations. Treas.Reg. § 1.333–4(b)(2) (1978). In addition, the revenue rulings expand the exception even further.

### Revenue Rulings

The Treasury Department issued three revenue rulings that excluded an even wider group of transactions from the meaning of acquire under I.R.C. § 333(e)(2). It is these revenue rulings which plaintiffs rely upon for support.

The most important revenue ruling is 56–171. *See generally* 1956–1 C.B. 180. It held that an I.R.C. § 368(a)(1)(A) merger was not an acquisition under I.R.C. § 333(e)(2). The non-acquiring exchange was nontaxable and did not effect the transferred stock's holding period or basis.

In the two relevant rulings which followed, the Treasury Department held that both transfers were acquisitions under I.R.C. § 333(e)(2) even though they were nontaxable and did not effect the transferred stock's holding period or basis. Both decisions, however, did not overrule revenue ruling 56–171 but were distinguishable on other grounds. Each transfer was invalidated because the predecessor transferor in the disputed transactions were ineligible under I.R.C. § 333(e)(2). Rev.Rul. 64–257, 1964–2 C.B. 91 (involving an I.R.C. § 368(a)(1) transaction with a foreign corporation transferor predecessor); Rev.Rul. 58–92, 1958–1 C.B. 174 (involving an I.R.C. § 351 transaction with an individual transferor predecessor). Thus, Revenue Ruling 56–171's proposition still holds: if an event is nontaxable, and does not effect the item's holding period or basis, it is not an acquisition under I.R.C. § 333(e)(2).

### Three Part Test

The early 1960's distributions had no effect on the basis or holding period of the GM stock but were taxable with an 85% deduction. Plaintiffs contend that only the same holding period and basis requirements are important, and they alone should be enough to exclude a transaction from being an acquisition under I.R.C. § 333(e)(2). Even if the requirement of nontaxability is important, plaintiffs argue that the early 1960's dividend distributions should be excluded because the 85% deduction made the event nominally taxable and merely represented a "tiny little toll charge." Transcript of Proceedings at 42.

This court cannot agree. The holding of Revenue Ruling 56–171, and the same conclusion that can be drawn from Revenue Rulings 58–92 and 64–257, has thus far provided the largest exemption from I.R.C. § 333(e)(2) to date. Three elements for exclusion are required in all of these rul-

ings and the fact that the 1960's dividend distributions did not effect the holding period or basis of GM stock is insufficient; the event must also have been nontaxable. It should be noted that this court is constrained to extend the exclusion any farther since specific exemptions from tax must be narrowly construed. *E.g., Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949); *Luben Industries, Inc. v. United States*, 707 F.2d 1037 (9th Cir.1983).

*Eighty-Five Percent Deduction*

This court is also not persuaded that the dividend distribution is equivalent to a non-taxable event because of the 85% deduction. The amount of tax imposed on a transaction is not the decisive factor; it is how that event is characterized. Thus, the dividend distribution would be considered an acquisition under I.R.C. § 333(e)(2) even if it was 100% deductible. The key element is whether that transaction's existence is acknowledged by the Code. All of the three revenue rulings involved realizable events, as follows: revenue ruling 56–171 and 64–257 involved a statutory merger under I.R.C. § 368(a)(1); and revenue ruling 58–92 involved an exchange for stock under I.R.C. § 351. *See generally* I.R.C. § 1001(b) (1956). However, each of these transactions was not taxable because the Code refused to recognize that the events had occurred. I.R.C. § 351(a)(1958); I.R.C. § 354(a)(1) (1956). The dividend distributions in this case were recognized by the Code, *see* I.R.C. § 301 (1962), and therefore it acknowledged the existence of the transfer as an acquisition within the meaning of I.R.C. § 333(e)(2). *See* I.R.C. § 1001(c)(1978).

*Double Taxation*

Lastly, it is contended that an imposition of tax on Dunmovin's transfer of stock would be inequitable because it would impose a double tax on the transfer of GM stock to plaintiffs. While the court has some sympathy with this argument, it is clear that impermissible double taxation

does not occur. Dunmovin's transfer of stock may have been a taxable event, but the dividend distributions of the early 1960's were 85% deductible under I.R.C. § 243. Thus, while it is true that this result imposes more tax than would have been imposed if du Pont had directly transferred the stock to plaintiffs, the extra amount of tax is a result of the dual transfer. This is one of the necessary effects of treating the corporate form as a real legal entity, rather than a mere representative of its stockholders. It is an anomaly that commentators have discussed for years. *See generally* C. McLure, Must Corporate Income Be Taxed Twice? (1979); Klein, *Income Taxation and Legal Entities*, 20 UCLA L.Rev. 13 (1972). While a business corporation is taxed on its profits, its shareholders pay a second tax on their dividends, with a relatively minor exemption.[2] This may not be economically reasonable to some, but it is a decision our legislators have embodied in our tax code. In fact, plaintiffs in this situation are subject to the least severe effect of this legal and tax recognition of corporate personhood. The 85% deduction goes a long way to eliminating what would be a full recognition of the dual nature of the transfer. *Cf. Klein v. Board of Supervisors*, 282 U.S. 19, 22, 51 S.Ct. 15, 15, 75 L.Ed. 140 (1930) (the state may tax the corporation and its shareholders as separate entities).

On the other hand, if the GM stock transfer on Dunmovin's liquidation is ignored as plaintiffs urge, plaintiffs would come out way ahead. No tax would be imposed on the Dunmovin liquidation and plaintiffs would benefit by the 85% deduction on the early 1960's distributions as well. The cumulative effect of plaintiffs' position would be to put them in a far better position than if du Pont had directly distributed the GM stock to plaintiffs in the early 1960's. Such a result would certainly be contradictory to plaintiffs' theory for the end result would be to encourage personal holding compa-

---

**2.** Prior to the 1986 Tax Reform Act, individuals received the insignificant deduction of $100 on dividends.

nies, which is certainly not a result desired by the Code. *See* I.R.C. § 542.

### Conclusion

Plaintiffs' refund claim must be rejected. Although certain transfers of stock have been ignored as acquisitions under I.R.C. § 333(e)(2), the dividend distribution between du Pont and Dunmovin was a recognizable event and therefore was an acquisition despite the fact that it did not affect the stock's holding period or basis. This court is then in agreement with the outcome of *Knowlton v. Commissioner;* the transfer of GM stock on Dunmovin's liquidation should be taxable as capital gains. However, this court, for the above reasons, does not find it determinative whether or not the transfer of stock represented a mere change in its nature or form as was held in *Knowlton.* 86 T.C. at 166, 168. Instead, this court holds that a transfer of stock will not be an acquisition under I.R.C. § 333(e)(2) where the transfer was not a recognizable event, did not change the stock's basis, and did not change the stock's holding period. Plaintiffs' motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the Clerk is directed to dismiss plaintiffs' complaint.

IT IS SO ORDERED.