Steven S. **HUBBARD** and Kathleen M. Hubbard, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. C03–2972JLR.

United States District Court, W.D. Washington at Seattle.

Jan. 13, 2005.

Don Paul Badgley, Duncan Calvert Turner, Badgley Mullins Law Group, Seattle, WA, for Plaintiff.

Robert Patrick Brouillard, US Attorney's Office (SEA), Seattle, WA, W Carl Hankla, US Department of Justice Tax Division, Washington, DC, for Defendant.

## ORDER

ROBART, District Judge.

## I. INTRODUCTION

This matter comes before the court on cross-motions for summary judgment. Plaintiff Steven Hubbard[1] seeks summary judgment that he is entitled to an income tax refund for the 2000 tax year. (Dkt.# 17). The Government seeks summary judgment that Plaintiff Hubbard is not entitled to a refund. (Dkt.# 22). For

---

1. Kathleen Hubbard, Mr. Hubbard's wife, is also a Plaintiff. As she does not figure in the court's discussion of the facts, the court will use "Plaintiff" to refer to Mr. Hubbard for the remainder of this order.

the reasons stated below, the court denies Plaintiff's motion and grants the Government's motion.

## II. BACKGROUND

This case arises from Plaintiff's exercise of a stock option that he received in 1996 when PMC–Sierra, Inc. ("PMC–Sierra") purchased his company, Bipolar Integrated Technologies, Inc. ("BIT"). In conjunction with the sale, Plaintiff received an option to purchase 90,000 shares of PMC–Sierra stock.

PMC–Sierra granted Plaintiff's option in a Stock Option Agreement ("Agreement"). The Agreement labeled the option an "Incentive Stock Option" and explained that it was "intended to qualify as an Incentive Stock Option under Section 422 of the Internal Revenue Code ...." Agreement ¶ II.1. The Agreement created a phased vesting schedule wherein Plaintiff gained the right to exercise his option to one quarter of the underlying stock beginning one year after the Agreement's inception and gradually gained the right to exercise his option as to the remaining shares over four years. Agreement ¶ I. The Agreement further provided that if Plaintiff was terminated from PMC–Sierra without cause before his option had completely vested, he would immediately gain the right to exercise all shares subject to the option. *Id.* In that circumstance, Plaintiff's option would convert to a "Nonstatutory Stock Option on the ninety-first (91st) day following such termination." Agreement ¶ II.6(iv).

Plaintiff states that he negotiated for the without-cause termination provision because he understood that when the combination of BIT and PMC–Sierra was complete, he would be terminated. He wanted to ensure that he would benefit from the acquisition of BIT even if he was terminat-ed. As he expected, PMC–Sierra gave him notice in December 1996 that his employment would end in January 1997. As provided in the Agreement, his option vested thereafter.

In 2000, Plaintiff exercised his option, purchased shares of PMC–Sierra, and treated the gain from that purchase as ordinary income. He reported a tax liability of more than $7.6 million.[2] In 2003, Plaintiff filed an amended 2000 tax return, lowering his reported income and requesting a $3.7 million refund. Plaintiff based the amended return on a claim that the option gave rise to income in 1996 when it was granted, not in 2000 when Plaintiff exercised it. The IRS disagreed. It took no action on Plaintiff's refund request, effectively denying it. Plaintiff sued to claim the refund that the IRS denied him.

## III. ANALYSIS

The court has jurisdiction over this refund dispute under 28 U.S.C. § 1346(a)(1). Ordinary summary judgment standards apply. *E.g., Flintkote Co. v. United States,* 7 F.3d 870, 871 (9th Cir.1993). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present significant, probative evidence to support its claim or defense. *Intel Corp. v. Hart-*

---

2. Plaintiff apparently exercised his option to purchase some shares in years prior to 2000, but the parties do not contest the tax effect of those purchases.

*ford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991). Reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000).

## A. The Internal Revenue Code Dictates that Plaintiff's Option Gave Rise to Income When He Exercised It, Not When PMC–Sierra Granted It to Him.

The parties' motions turn on whether Plaintiff's option gave rise to income when it was granted in 1996 or when he exercised it in 2000. An analysis of the distinction requires an overview of the applicable provisions of the Internal Revenue Code (the Code) and its interpretive regulations. First, stock options under the Code are either "statutory" or "non-statutory" or, equivalently, "qualified" or "non-qualified." Sections 421–423 of the Code define statutory stock options and explain their tax treatment. Although there are two kinds of statutory options, the only one that the parties focus on is the "incentive stock option" as defined in 26 U.S.C. § 422. Incentive stock options under Section 422 give rise to income adjustments under the Code's Alternative Minimum Tax provisions. 26 U.S.C. § 56(b)(3). Thus, if Plaintiff's option was an incentive stock option, he cannot claim that he recognized income in 1996 when it was granted. Plaintiff does not dispute this.

■ The court cannot conclude that Plaintiff's option was, as a matter of law, an incentive stock option. Code Section 422 sets out a six-part test for incentive stock options, and includes additional qualifications. The Government makes little effort to show that Plaintiff's option meets that test. The Government provides no evidence that the option was granted under an appropriate corporate plan as required in 26 U.S.C. § 422(b)(1)-(2). Nor does the government properly address the "$100,000 per year limitation" of 26 U.S.C. § 422(d), and the bifurcation of options that exceed that limitation that is described in 26 C.F.R. § 1.422–4(c).

■ The court thus assumes, for purposes of these motions, that Plaintiff's option was a non-statutory option. Section 83 of the Code and 26 C.F.R. § 1.83–7 (" § 1.83–7") govern the tax consequences of non-statutory options. Under § 1.83–7, a person exercising non-qualified options whose value is "readily ascertainable" when granted "realizes compensation upon such grant at the time and in the amount determined under [26 U.S.C.] section 83(a)." 26 C.F.R. § 1.83–7(a). If, however, the option's value is not readily ascertainable at the time of grant, 26 U.S.C. § 83 applies "at the time the option is exercised or otherwise disposed of ...." *Id.; see also Cramer v. Commissioner,* 64 F.3d 1406, 1411 (9th Cir.1995). Plaintiff's success on his motion thus depends on showing that his option was a non-statutory option that had a "readily ascertainable" value at the time it was granted.

As a matter of law, Plaintiff's option had no "readily ascertainable" value when PMC–Sierra granted it to him. The Code's regulations explain how to determine if the value of an option is readily ascertainable. First, an option has a readily ascertainable value if the option (not the underlying stock) is "[a]ctively traded on an established market." 26 C.F.R. § 1.83–7(b)(1). It is undisputed that there was no established market for options that PMC–Sierra granted to its employees.

Alternatively, an option has a "readily ascertainable" value if the option meets each of the four conditions listed in 26 C.F.R. § 1.83–7(b)(2)(i)–(iv) at the time it

was granted. *Cramer*, 64 F.3d at 1411. To meet the four conditions, Plaintiff's option would have to have been "transferable by the optionee," "exercisable immediately in full," "not subject to any restriction or condition . . . which has a significant effect upon the fair market value of the option," and have an "option privilege" with a "readily ascertainable" value. 26 C.F.R. § 1.83–7(b)(2)(i)–(iv). The "option privilege" is the option holder's advantage over an ordinary stockholder in that he gains the benefit of any rise in value of the underlying stock without having to risk or encumber capital. 26 C.F.R. § 1.83–7(b)(3). Although there are no fixed rules for determining if the option privilege has a readily ascertainable value, courts are directed to consider three factors. 26 C.F.R. § 1.83–7(c)(i)–(iii) (factors include whether the property underlying the option has readily ascertainable value, the probability that the value will change, and the length of the period during which the option is exercisable).

Plaintiff cannot meet the conditions for demonstrating that his option had a "readily ascertainable" market value when PMC–Sierra granted it to him. When PMC–Sierra granted the option,[3] the option was non-transferable. Agreement ¶ II.4. It was not exercisable "immediately in full," but rather only when enough time had passed or when Plaintiff was terminated without cause. Agreement ¶¶ I, II.6; *see Cramer*, 64 F.3d at 1412.[4] And, although the court need not reach the issue (*Cramer*, 64 F.3d at 1412), there seems no way to "readily ascertain" the value of the option privilege inherent in Plaintiff's option.

Put simply, Plaintiff's motion fails because he cannot meet the requirement in § 1.83–7 that the option have a readily ascertainable value at the time it is granted. The court now will examine why Plaintiff's efforts to avoid § 1.83–7 are also unavailing.

**B. Plaintiff Mistakenly Relies on *Morrison v. Commissioner* and *Colton v. Williams*.**

■ Much of Plaintiff's argument relies on *Morrison v. Commissioner*, 59 T.C. 248, 1972 WL 2534 (1972), which Plaintiff contends is "controlling authority."[5] In *Morrison*, the United States Tax Court concluded that the petitioner's non-statutory option to purchase seventy-five shares of a company with which his own company merged had a "readily ascertainable" value. *Id.* at 259–260 (citing then-in-effect 26 C.F.R. § 1.421–6, the precursor to 26 C.F.R. § 1.83–7).

*Morrison* only emphasizes why Plaintiff's option had no "readily ascertainable" value when it was granted. In *Morrison*,

---

**3.** The parties disagree about the date that Plaintiff's option was granted. The president of PMC–Sierra signed Plaintiff's Stock Option Agreement on September 4, 1996. Plaintiff did not sign the Agreement until November 26, 1996. Neither date makes a difference in the court's resolution because Plaintiff concedes that both his termination from PMC–Sierra (in January 1997) and his formal notice of termination (in December 1997) came after November 26, 1996.

**4.** The court notes that the Agreement, Plaintiff's termination letter, and Plaintiff's course of conduct create ambiguity about whether

Plaintiff's option was 100% vested upon his termination, or 90 days thereafter, or only in accordance with the four-year phased vesting schedule set forth in Paragraph I of the Agreement. For purposes of this motion, the ambiguity makes no difference, as Plaintiff's options were not vested when they were granted.

**5.** Except for *res judicata* issues, Tax Court precedent does not bind a United States District Court. *See Somerville v. United States*, 13 Cl.Ct. 287, 290 (1987). Tax court opinions may serve as persuasive authority. *Id.*

the parties did not contest that the stock options Morrison received were "freely transferable" upon grant, "exercisable immediately in full," and "not subject to any restriction ... which [had] a significant effect upon the fair market value of the option ...." *Id.* at 260. Indeed, the contracts at issue in the case granted utterly unrestricted options to the petitioner. *Id.* at 251. In the case at bar, the option was not freely transferable and not immediately exercisable. Plaintiff cannot overcome this critical distinction between his option and the one at issue in *Morrison.*

The court is also not persuaded by Plaintiff's reliance on *Colton v. Williams,* 209 F.Supp. 381 (N.D.Ohio 1962). In that case, the court relied on expert testimony from a stock broker who testified that Plaintiff's stock option had a readily ascertainable value when it was granted. *Id.* at 384. In relying on that testimony the court simply disregarded the applicable regulation then in effect, 26 C.F.R. § 1.421–6, the precursor to § 1.83–7. *Id.* at 384–85. Without explaining why the court could refuse to apply the regulation, the court found that the expert's valuation of the option "appear[ed] to conform to a reasonable interpretation of the conditions imposed by the Regulation." *Id.* at 385.

This court is not at liberty to overlook the applicable regulation. The court notes that 26 C.F.R. § 1.83–7 provides mandatory and exclusive means for valuing non-statutory options. It does not permit other methods, and it does not permit the court to arrive at its own methodology. Moreover, the Ninth Circuit has already upheld § 1.83–7 against a challenge that it was unlawful because it allegedly ignored Congress' intent to provide a means to value all non-statutory options. *Cramer,* 64 F.3d at 1413. In so holding, the court noted that § 1.83–7 is the mandatory means for determining whether an option has a readily ascertainable value under 26

U.S.C. § 83(e)(3). *Id.* at 1412. Thus, even if the court found the reasoning in *Colton* persuasive, controlling authority in this Circuit would prevent the court from following it.

## C. The Character of Plaintiff's Option Was Fixed When It Was Granted, Not When It Vested.

■ As an alternate means of avoiding the effect of § 1.83–7, Plaintiff urges the court to disregard the form of the transaction in which he received the option and focus instead on the surrounding circumstances. Plaintiff argues that those circumstances make clear that he bargained to receive an unrestricted option on the date of his termination, and that the court should therefore treat the option as an unrestricted option. Under the Agreement, Plaintiff's stock option "automatically convert[ed] to a Nonstatutory Stock Option on the ninety-first (91st) day following [his] termination" as long as he did not exercise the option during the 90 days after his termination. Agreement ¶ II.6(a)(iv).

The court cannot accept Plaintiff's position because the Code and its regulations speak uniformly of determining the character of a stock option on the date it is granted. *E.g.,* 26 C.F.R. § 1.83–7(a); 26 C.F.R. § 1.421–1(b)(3)(i) ("The determination of whether an option is a statutory option is made as of the date such option is granted."). Here, it is undisputed that Plaintiff's option was granted before he was terminated (*see* n.4, *supra*), and that when it was granted, it was an option without "readily ascertainable" value as the court has previously noted. Absent any authority to the contrary, the court concludes that under the Code, the option continued to be treated as such even after PMC–Sierra terminated Plaintiff and the option converted to a non-statutory option.

*See, e.g.,* 26 C.F.R. § 1.421–1(b)(3)(i) ("An option which is a statutory option does not lose its character as such an option by reason of subsequent events.").

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion for summary judgment (Dkt.# 17). As Plaintiff cannot, as a matter of law, prevail on his claim for a refund, the court GRANTS the Government's motion for summary judgment (Dkt.# 22). The clerk shall enter judgment dismissing this case in accordance with this order.