John F. KNOWLTON and Betty F. Knowlton, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 85–3694, 85–3842.

United States Court of Appeals, Eleventh Circuit.

June 24, 1986.

mination of preemption by OPM is necessarily reasonable.

B. Gray Gibbs, Ronald G. Hock, St. Petersburg, Fla., Herbert L. Camp, New York City, for petitioners-appellants in 85–3694.

Fred T. Goldberg, Jr., Office of Chief Counsel, Marlene Gross, Acting Director, I.R.S., Tax Litigation, Glenn L. Archer, Jr. Asst. Atty. Gen., U.S. Dept. of Justice, Michael L. Paup, Chief Appellate Section, Roger M. Olsen, Acting Asst. Atty. Gen., Tax Div., Ann B. Durney, Washington, D.C., David M. Moore, Francis M. Allegra, William S. Estabrook, U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for C.I.R.

Herbert L. Camp, Kristen L. Griese, New York City, for petitioners-appellants in 85–3842.

Before KRAVITCH and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

*No. 85–3842.*

Petitioners John F. and Betty W. Knowlton, hereinafter "taxpayers," seek to have this Court reverse the decision of the Tax Court of the United States which affirmed findings by the Commissioner of Internal Revenue of substantial deficiencies in their 1978 taxes.

## I. BACKGROUND

Petitioners were shareholders of Dunmovin Corporation, a personal holding company. In 1978, Dunmovin was completely liquidated pursuant to Internal Revenue Code § 333. As a part of the liquidation, Mrs. Knowlton, who owned 975 shares of Dunmovin non-voting stock, received marketable securities including 24,950 shares of General Motors stock. Appellants filed a joint tax return for 1978 in which they reported net long-term capital gain of $124,396. In computing their capital gain on the distribution from Dunmovin, they excluded the value of the stock, relying on their contention that within the terms of IRC § 333(e)(2) the stock had been "acquired" by Dunmovin prior to January 1, 1954.[1] It is not necessary for us to discuss the other factors that are to be considered in applying Section 333(e)(2), for the parties agree that the taxability of a gain on the acquisition of this stock is dependent on when it was "acquired" by Dunmovin, the liquidated personal holding company.

The Commissioner determined that the GM stock had been "acquired" by Dunmovin after December 31, 1953 and that under Section 333(e)(2), appellants should have included an additional $1,500,118.75 as capital gain resulting from the distribution of the GM stock.

---

**1.** Section 333(e) provides as follows for noncorporate shareholders receiving a liquidating distribution under Section 333:

(1) there shall be recognized, and treated as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 18, 1913, such earnings and profits to be determined as of the close of the month in which the transfer in liquidation occurred under subsection (a)(2), but without diminution by reason of distributions made during such month; but by including in the computa-

tion thereof all amounts accrued up to the date on which the transfer of all the property under the liquidation is completed; and

(2) there shall be recognized, and treated as short-term or long-term capital gain, as the case may be, so much of the remainder of the gain as is not in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock or securities *acquired* by the corporation after December 31, 1953, exceeds his ratable share of such earnings and profits. (Emphasis added.)

A separate question is raised because during 1978, appellants apparently sold certain shares of GM stock. They argue that these were shares received in the Dunmovin distribution, and that had they treated the shares as having been acquired by Dunmovin after 1954, they would have had a higher basis in the stock and therefore less of a capital gains tax on the sale of them. This issue was raised by taxpayers in opposition to the Commissioner's Entry of Decision under Tax Court Rule 155.

## II. STATEMENT OF FACTS

Some time prior to 1954, Dunmovin acquired shares of E.I. duPont de Nemours stock. Also prior to 1954, duPont obtained shares of General Motors common stock. As a result of an anti-trust action brought by the United States, duPont was compelled in 1963 and 1965 to divest itself of GM stock by distributing those shares to its shareholders as a dividend. *United States v. E.I. duPont de Nemours & Co.*, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957), later opinion 366 U.S. 316, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961). As a shareholder of duPont, Dunmovin received some of the GM stock in those years.

Pursuant to Code Section 301(d), the adjusted basis of the GM stock in the hands of Dunmovin was the same as in the hands of duPont, and Dunmovin's holding period for the stock included the period the stock was owned by duPont. All of the facts bearing on the taxability of the G.M. stock upon the liquidation of Dunmovin are stipulated by the parties.

## III. ISSUES

(1) Whether the Tax Court correctly interpreted the meaning of "acquired" under Internal Revenue Code Section 333(e)(2).

(2) Whether appellants' Rule 155 memorandum raised a "new issue."

(1) *Meaning of "Acquired" under Section 333(e)(2)*

This is a narrow issue, and apparently one of first impression. The term "ac-

quired" is not defined in the Code, in Treasury regulations, in the legislative history, or in cases decided under Section 333(e)(2). Its significance relates to appellants' long term capital gain tax for 1978. If appellants "acquired" the GM stock after 1953, then the GM stock constitutes long term capital gain, taxable in 1978 when Dunmovin was liquidated. If, however, the GM stock was "acquired" before 1954, taxation of the long term capital gain could be deferred until the stock was sold.

At bottom, this is a matter of statutory interpretation, with the government urging a "plain meaning" reading of the statute and appellants urging a reading which takes into account arguably relevant Revenue Rulings and the legislative history of similar Internal Revenue Code provisions.

The Tax Court began its quest to ascertain the meaning of the term by quoting from *Commissioner v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) to the effect that:

the common and ordinary meaning [of a word] should at least be persuasive of its meaning as used in the Internal Revenue Code [except when such a reading] would lead to absurd results ... or would thwart the obvious purpose of the statute.

It then noted that, in common parlance, one acquires property when one obtains ownership, possession, or control over it. Under this definition, Dunmovin did not "acquire" the GM stock until it actually received it, after December 31, 1953. The Tax Court, however, recognized an exception to this ordinary meaning. The term "acquired" has a meaning different than that used in common parlance when the "acquired" shares represent no more than a change in form. This occurs when the " 'acquired' shares represent no more than a substitution for, or additional shares of the same type as, shares previously acquired." 84 TC 160, 163.

### A. *Legislative History*

The court then turned to examine the legislative history of Section 333(e)(2). Sec-

tion 333(e)(2) was originally enacted in 1938 as a temporary relief measure designed to facilitate the liquidation of personal holding companies.[2] The provision was reenacted as a temporary measure in 1943, 1950, and 1951. It was made a permanent provision when the Internal Revenue Code was enacted.

We agree with the Tax Court that after examining the relevant legislative history, it is of no particular help in resolving this issue as to the meaning of the word "acquired" as used in this section.

### B. *Revenue Rulings*

After finding the legislative history unhelpful in its task of construing "acquired", the court then turned for guidance to the Revenue Rulings of the Commissioner. This Court has stated that such rulings are "entitled to weight, because [they express] the studied view of the agency whose duty it is to carry out the statute." *See Anselmo v. Commissioner*, 757 F.2d 1208, 1213 n. 5 (11th Cir.1985); *City Gas Co. of Florida v. Commissioner*, 689 F.2d 943, 946 n. 5 (11th Cir.1982). *See also, Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146–47 (5th Cir.1971).

### 1. *Rev.Rul. 56–171*

The court first considered Rev.Rul. 56–171, 1956–1 C.B. 179. This ruling involved the acquisition date of stock acquired in connection with a statutory merger. M corporation merged into N corporation. M corporation stockholders received two shares of N stock for each share of M stock. Pursuant to section 354, M corporation stockholders were not taxed on the transaction.

The M corporation stockholders acquired their stock in M corporation before Decem-

ber 31, 1953. They actually received the N stock after that date. The Commission ruled that the acquisition date of the N stock was the same as the acquisition date of the M stock. The Commissioner offered no explanation for this ruling.

Appellants offer a broad interpretation of this Rule. According to them, "the ruling stands for the proposition that, where shares actually received after 1953 have a substituted basis and holding period that commences prior to 1954, those shares are considered "acquired" prior to December 31, 1953, for purposes of section 333."

The government argues that the obvious, though not articulated, basis for the ruling is that the stock received in the merger was merely a change in form of the stock previously held. Moreover, the government argues the unstated rationale of 56–171 is made explicit in Rev.Rul. 58–92, 1958–1 Cum.Bull. 174.

### 2. *Rev.Rul. 58–92*

The stock and securities in question were received by a domestic corporation, upon its organization in July, 1955, from its sole shareholder in a transaction nontaxable under § 351.[3] Both the basis and the holding period of the stock as to the corporation was the same as it was in the shareholder's hands. The Commissioner ruled that the stock had been acquired by the corporation when it was received in July, 1955, even though the shareholder had acquired the stock before December 31, 1953.

In reaching this result, the Commissioner articulated the general rule that there will be no relation back unless the stock and securities were owned by a corporation existing on December 31, 1953 "or were received, with respect to stock or securities owned on that date, in a nontaxable ex-

---

**2.** Except for the cutoff date of December 31, 1953, the present version is identical to the original version.

**3.** Section 351(a) provides that no gain or loss shall be recognized if property is transferred to

a corporation by one or more persons solely in exchange for stock or securities of the corporation, if, immediately after the exchange, the contributors are in control of the corporation.

change pursuant to a plan of reorganization or as a nontaxable stock dividend." As the stock and securities in question were transferred after December 31, 1953 to a corporation formed after that date, there was no relation back.

The Commissioner explained Rev.Rul. 56–171 as not involving an acquisition within the meaning of the statute because such transactions are "merely changes in the nature or form of stock already owned by the liquidation corporation."

### 3. *Rev.Rul. 64–257*

This ruling involved the liquidation of a domestic corporation which had received shares from its foreign corporation predecessor in a nontaxable reorganization. The foreign corporation held the shares prior to 1954. The domestic corporation actually received them in 1957.

In disallowing relation back, the Commissioner distinguished Revenue Ruling 56–171 as "applicable only to cases involving nontaxable exchanges of stocks or securities already owned by the domestic corporation on December 31, 1953, such corporation being later liquidated under the provisions of Section 333 of the Code." In this case, the domestic corporation acquired the stock for the first time in 1957.

Moreover, the Commissioner ruled that this transaction was similar to 58–92. There the prior holder, an individual, could not qualify for Section 333 treatment. In Rev.Ruling 64–257, the foreign corporation could not either, as the section relates to domestic corporations. In the ruling, the Commissioner stated:

Under the circumstances of this case the fact that the liquidating corporation acquired the investment stock held by its predecessor on December 31, 1953, in a nontaxable reorganization as defined in Section 368(a)(1) of the Code is not determinative. What is determinative is that the stock was acquired after December 31, 1953 from a foreign corporation, one

that could not have qualified for treatment under the provisions of Section 333 of the Code.

Appellants seized the quoted language to argue that relation back would have been allowed had the transferor corporation been domestic rather than foreign.

We agree with the Tax Court's rejection of this argument by reference to old fashioned logic. According to the court, appellants' logic is flawed in that it assumes that (1) if condition A exists, and consequence B results, then (2) if condition A does not exist, then consequence B will not result.

On appeal, the taxpayers argue that there was no ground for denying Section 333 treatment other than the fact that the corporation was foreign rather than domestic, because if there had been "the Service most assuredly would have raised it." This is no argument at all. It is comparable to an argument that when this Court reverses a decision of a trial court on a stated ground, we have rejected all of the other grounds that are not dealt with in the opinion. We know of no such jurisprudence.

### 4. *Summary*

■ The Commissioner agrees that a relation back acquisition date is appropriate where the acquired shares represent a mere change in the nature or form of stock previously held by the liquidating corporation, as was the case in Revenue Ruling 56–171. Here, we agree with the Tax Court that the present transaction constituted more than a mere change in form. Without surrendering anything, Dunmovin was given 24,950 shares of General Motors stock. Since, of course, Dunmovin's ownership of stock in duPont did not represent ownership of any of the assets of duPont, *see Klein v. Board of Tax Supervisors of Jefferson County, Ky.*, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140 (1930), it is obvious that after the transaction, Dunmovin owned something quite different than it

had before it received the General Motors stock. This was no mere change in form of the stock held by Dunmovin.

We therefore conclude, as did the Tax Court, that the General Motors stock was acquired after 1954.

#### (2) *Basis Adjustment, A New Issue?*

Pursuant to Tax Court Rule 155, the court directed each party to recompute the taxpayers' liability in light of the court's opinion after they could not agree on a joint computation.[4] Each party submitted a supporting memorandum. The only difference between the computations was the proper long-term capital gain tax on stock sold in 1978.

Appellants argued that the Tax Court's opinion that the GM stock had been acquired after 1953 entitled them to an automatic basis adjustment under Section 334(c)(2). With an increased basis in the 1978 stock, appellants' long-term capital gain tax would have been reduced, as would their deficiency.

The Tax Court held that there was nothing in the record to support the contention that the GM stock sold in 1978 was actually the same stock received in liquidation, as would have to be the case under Section 334(c)(2).

Moreover, the court pointed out that Rule 155(c) confines argument under Section 155 to computational issues, and specifically forbids the argument of new issues. The court also denied appellants' motion for a hearing on this issue.

■ The standard of review from the Tax Court's handling of this matter is the abuse of discretion standard. We do not find that there was any such abuse.

Up until the computation submission by taxpayers, they argued only the question relating to when the GM stock had been acquired. After the Tax Court's opinion, they asserted that the sale of certain General Motors shares sold by them in 1978 involved the shares of GM stock received in liquidation of Dunmovin. They claim that since the Tax Court's opinion required them to recognize long-term capital gain on the receipt of certain GM stock, they were entitled, under Section 334(c)(2) of the Code, to increase their basis in the GM stock sold in 1978. The Tax Court held that the record did not contain evidence indicating that the GM stock sold in 1978 was the stock received in the distribution from Dunmovin.

The taxpayers seemed to excuse their failure to introduce this issue previously, because they say in effect that they would have been arguing against their position that the stock had been acquired prior to 1954. Answering this contention, the Tax Court correctly stated:

> Petitioners could have pleaded and argued their Section 334(c)(2) contention in the alternative and presented evidence of the acquisition date of the stock sold in 1978 at the trial of this case. Instead, we are faced with an incomplete record and an argument for a last minute basis adjustment.

We conclude that the Tax Court did not abuse its discretion in refusing to consider

---

**4.** In such a situation, the Tax Court rule provides:

> (c) *Procedure in absence of agreement.* If, however, the parties are not in agreement as to the amount of the deficiency, liability, or overpayment to be entered as the decision in accordance with the findings and conclusions of the Court, either of them may file with the Court a computation of the deficiency, liability, or overpayment believed by him to be in accordance with the Court's findings and conclusion. The Clerk will serve upon the opposite party a notice of such filing accompanied by a copy of such computation. If the opposite party fails to file objection, accompanied or preceded by an alternative computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions *or to any new issues.* This Rule is not to be regarded as affording an opportunity for retrial or reconsideration. (Emphasis added.)

this newly raised issue, presented for the first time after the trial and decision of the court dealing with the acquisition of the General Motors stock.

The judgment of the Tax Court is AFFIRMED.

*No. 85–3694*

The decision in this case is controlled by our previous decision in *Sutton, et al. v. Commissioner of Internal Revenue,* decided by the Eleventh Circuit, April 16, 1986, 788 F.2d 695. The judgment of the Tax Court is AFFIRMED on the basis of the opinion of the Tax Court, 84 T.C. 210 (1985).