[No. A071462. First Dist., Div. Three. Jan. 27, 1997.]

GERALD F. MUETHING et al., Plaintiffs and Respondents, v. FRANCHISE TAX BOARD, Defendant and Appellant.

[No. A072653. First Dist., Div. Three. Jan. 27, 1997.]

GERALD F. MUETHING et al., Plaintiffs and Appellants, v. FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

Barbara Spector and Karin Rumstedt for Plaintiffs and Appellants and for Plaintiffs and Respondents.

Daniel E. Lungren, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendant and Appellant and for Defendant and Respondent.

OPINION

PARRILLI, J.—The question in this case is whether certain stock qualified as "small business stock" when sold. If it did, the transaction was not subject to California's preference tax. The trial court concluded the stock at issue did qualify as "small business stock" and thus no part of the gain could be taxed as preference income. We disagree for the reasons set out below and reverse the judgment.

To resolve the issue we consider tax statutes that have been repealed, but still govern the disposition of considerable outstanding tax claims. Under the repealed law, capital gain from the sale of assets was subject to two kinds of income tax. One portion of the gain was taxed as ordinary income. The remainder of the gain in most cases did not escape taxation entirely, but was treated as an item of tax preference and separately taxed as preference income at rates different from the rates at which ordinary income was taxed. However, if the capital asset qualified as "small business stock," the portion of capital gain not counted as ordinary income was also not considered to be preference income and escaped taxation entirely. (*Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 265-266 [36 Cal.Rptr.2d 563, 885 P.2d 976] (*Lennane*); see also Lane, Cal. Practice, State and Local Taxation (2d ed. 1987) § 421, pp. 369-370 & (1992 pocket part) pp. 138-139); Rev. & Tax. Code, former § 17063.[1])

I

FACTS

In 1976, Gerald F. Muething and Ira H. Spector (collectively taxpayers) started a small electronics company, Paratronics Inc. (Paratronics). The

---

[1]References to sections 17063, 17063.11, and 18162.5 are to Revenue and Taxation Code sections repealed in 1987 (Stats. 1987, ch. 1138, §§ 40, 131, pp. 3911, 3934).

company designed and manufactured low-cost equipment to test computer microprocessors, thus making the test equipment easily available to emerging small businesses producing microprocessor-based products. The taxpayers acquired their stock in Paratronics in January 1977. Paratronics stock at that time qualified as "small business stock" as defined in Revenue and Taxation Code section 18162.5, subdivision (e).[2] In particular, Paratronics's primary place of business was in California, it did not employ more than 500 employees, did not list its shares on a stock exchange, and met the other statutory requirements for a small business.[3]

Paratronics prospered and grew. In 1981, Nicolet Instrument Corporation (Nicolet) of Wisconsin, which was not a small business within the meaning of section 18162.5,[4] acquired Paratronics through a merger. Nicolet acquired Paratronics through the following procedure: Nicolet established a California corporation, Nicolet Interim Corporation (NIC), as a wholly owned subsidiary. NIC then merged into Paratronics, leaving Paratronics as the surviving corporation. Paratronics was renamed "Nicolet-Paratronics" but continued to operate its preexisting business. The taxpayers did not receive any cash in the exchange. Instead, they received Nicolet stock in exchange for their Paratronics stock. This so-called "triangular phantom merger" (3 Marsh & Finkle, Marsh's Cal. Corporation Law (3d ed. 1990) § 19.9, p. 1586) qualified as a tax-deferred reorganization under Internal Revenue Code sections 368(a)(1)(A) and 354(a)(1). Consequently, the taxpayers owed no capital gains tax at the time of the merger even though they exchanged their Paratronics stock for the more liquid Nicolet stock.

In 1982 through 1985, both taxpayers sold some of the Nicolet stock they had received in the merger, realizing and paying ordinary income tax on a portion of their long-term capital gain. Taxpayers also paid a preference tax on the portion of the gain not taxed as ordinary income. Upon the advice of

---

[2]The Legislature originally defined "small business stock" in section 18161.5. However, the Legislature repealed section 18161.5 in 1983 and reenacted it as section 18162.5, subdivision (e). (Stats. 1983, ch. 488, §§ 64-65, pp. 1929-1931; *Lennane, supra,* 9 Cal.4th at p. 272.) For the sake of simplicity, this opinion refers only to section 18162.5 subdivision (e) for the definition of "small business."

[3]Subdivision (e) of section 18162.5 provided in relevant part: "(e) For purposes of this section, 'small business stock' is an equity security issued by a corporation which has the following characteristics at the time of acquisition by the taxpayer: [¶] (1) The commercial domicile or primary place of business is located within California. [¶] (2) The total employment of the corporation is no more than 500 employees . . . . [¶] (3) The outstanding issues of the corporations . . . are not listed on the New York Stock Exchange, the American Stock Exchange, or the National Association of Security Dealers Automated Quotation [NASDAQ] System. [¶] (4) No more than 25 percent of gross receipts in the immediate prior income year were obtained from rents, interest, dividends, or sales of assets. [¶] (5) The corporation is not engaged primarily in the business of holding land." (Stats. 1985, ch. 106, § 133, pp. 323-324.)

[4]Nicolet was based in Wisconsin and its shares were publicly traded.

their accountant, the taxpayers later filed for a refund of the preference tax. They contended their Nicolet shares carried forward the "small business" characteristics of their Paratronics shares. Since capital gain from the sale of "small business stock" is exempt from the preference tax, they argued they were entitled to a refund of the preference tax. (§ 17063.11.) The Franchise Tax Board (Tax Board) denied the refund claims with respect to some of the tax years and issued a refund for other tax years, but then reversed the refunds by issuing notices of assessment.

Taxpayers thereafter filed this action for refunds for tax years 1982 through 1985. After a bench trial, the court concluded the portion of taxpayers' capital gain which was not taxed as ordinary income was exempt from the California preference tax pursuant to section 17063.11, because it was attributable to the sale of small business stock. The court ordered the Tax Board to refund the preference tax ($11,503 for Muething and $27,010 for Spector) with interest. The Tax Board filed a timely notice of appeal.[5]

## II

### DISCUSSION

Section 17063.11 provides that none of the gain "attributable to the sale of small business stock, as defined in Section 18162.5" is subject to tax as preference income. (Stats. 1984, ch. 938, § 8, pp. 3199-3200; *Lennane, supra*, 9 Cal.4th at p. 266.) Subdivision (e) of section 18162.5 provides: "For purposes of this section, 'small business stock' is an equity security issued by a corporation which has the following characteristics *at the time of acquisition by the taxpayer . . . ."* (Italics added.) Those characteristics include primary place of business in California, no more than 500 employees, and stock not listed on a major exchange. (See fn. 3, *ante*.)

The Paratronics stock acquired by the taxpayers qualified at all times as small business stock within the meaning of section 18162.5, subdivision (e). However, the Nicolet stock acquired in 1981 did not qualify as "small business stock" within the meaning of the statute.

The Tax Board contends we must follow the plain language of sections 18162.5 and 17063.11. Because Nicolet did not have the statutory characteristics of a small business when the taxpayers acquired stock in that company, the Tax Board argues that gain from the sale of the Nicolet stock

---

[5] While the Tax Board's appeal was pending (A071462) taxpayers filed their own appeal from the trial court's postjudgment order denying them attorney's fees (A072653). This court consolidated the two appeals.

was not "attributable to the sale of small business stock." Instead, it was attributable to the sale of stock in Nicolet, which was not a small business in 1981. As the Tax Board puts it: "If the trial court had followed the plain language of [section] 18162.5 (e), it would have concluded that [taxpayers'] gain was not entitled to the preference tax exemption because Nicolet was not a small business when [taxpayers] acquired their Nicolet stock."

Taxpayers, on the other hand, contend the small business character of their Paratronics stock carried forward into the Nicolet shares they received in the merger. The trial court agreed. It reasoned that "the . . . 'phantom' triangular[6] merger entered into by Paratronics and Nicolet left Paratronics as the surviving entity thus allowing Paratronics to continue to operate the same business as it has previously operated. (3 Marsh & Finkle, Marsh's California Corporation Law, § 19.9, at pp. 1586-1587 (3d ed. 1990).) Accordingly, the reorganization resulted in the continuing existence of Paratronics as a California corporation with a change in name only. The 'acquisition' of Nicolet stock in a stock-for-stock exchange pursuant to a . . . 'phantom' triangular merger was a substitution for shares previously acquired, at which previous time, the applicability of section 17063.11 and the 'small business stock' [exemption] was determined. The . . . 'phantom' triangular merger did not result in any substantial change in the corporation itself because Paratronics remained the surviving corporation which continued operating the same business that it had previously operated. Accordingly, [the Nicolet stock that taxpayers substituted for their Paratronics stock was 'small business stock' within the meaning of section 17063.11.] [¶] In addition, the reorganization was a tax-deferred reorganization pursuant to Internal Revenue Code section 368(a)(1)(A)(a), and hence was a transaction effecting 'a continuance of the proprietary interests in the continuing enterprise under modified corporate form.['] (Commissioner v. Clark (1989) 489 U.S. 726, 741 [109 S.Ct. 1455, 1464, 103 L.Ed.2d 753] .) . . . Thus, the tax-deferred reorganization and reverse triangular merger left the 'small business' characteristic of the surviving corporation intact, and the Nicolet stock received by plaintiffs in the exchange was not newly acquired stock for the purposes of retesting for 'small business stock' characteristics. [¶] It follows that the

[6]Although the trial court referred to this transaction as a "reverse" triangular phantom merger, we perceive it as a simple triangular phantom merger, as that term has been defined in 3 Marsh and Finkle, Marsh's California Corporation Law, supra, § 19.9 at page 1587. A "reverse" merger implies the smaller corporation acquires the larger corporation. In a reverse transaction "the corporation which would 'normally' be considered to be the acquired corporation can be made the acquirer, but with the transaction still achieving exactly the same substantive result." (3 Marsh & Finkle, supra, § 19.3 at p. 1574.) Here, since the larger corporation (Nicolet) ultimately acquired the smaller corporation (Paratronics), we do not perceive it to be a "reverse" merger. We therefore refer to the transaction as a "triangular phantom merger."

'small business stock' characteristic would carry forward to the Nicolet stock received by plaintiffs in the exchange . . . ."

We reject the trial court's analysis. First, the plain language of the statutes indicates the sale of Nicolet stock—which admittedly was not a small business—was not exempt from the preference tax. Secondly, we do not agree with the trial court that the exchange of Paratronics stock for Nicolet stock was a mere "substitution" of shares. Instead, the taxpayers received liquid[7] shares in Nicolet for their illiquid shares in the closely held Paratronics corporation. As we explain below, this was more than a mere substitution of shares.

## A. *The Plain Language of the Statute Controls.*

The Supreme Court recently summarized the applicable rules of statutory construction while interpreting the very statutes we are considering here: " 'In construing statutes, we must determine and effectuate legislative intent.' [Citation.] 'To ascertain intent, we look first to the words of the statutes' [citation], 'giving them their usual and ordinary meaning' [citation]. If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' [Citation]." (*Lennane, supra,* 9 Cal.4th at p. 268.)

The plain language of the statutes clearly indicates gain from the sale of Nicolet stock is not exempt from the preference tax. Section 17063.11 provides that none of the gain "attributable to *the sale of small business stock,* as defined in Section 18162.5" is subject to tax as preference income. (Stats. 1984, ch. 938, § 8, pp. 3199-3200; *Lennane, supra,* 9 Cal.4th at p. 266.) Subdivision (e) of section 18162.5 provides: "For purposes of this section, 'small business stock' is an equity security *issued by a corporation* which has the following characteristics *at the time of acquisition by the taxpayer* . . . ." (Italics added.) Both sides agree that when the taxpayers acquired their stock in Paratronics that corporation was a small business. Thus, had the taxpayers sold their Paratronics stock for cash, or in a nondeferred exchange, the gain from that sale or exchange would have been exempt from the preference tax.

Both sides also agree Nicolet stock, standing alone, was not small business stock when the taxpayers acquired their shares in that corporation in

---

[7]We are aware taxpayers received "restricted" stock in Nicolet, meaning they could not immediately sell their shares on a public exchange. However, those restrictions expired within a year and taxpayers were able to sell their stock on a public exchange beginning in 1982. Even with these restrictions, the Nicolet stock was more liquid than the Paratronics shares.

1981. This is because the Nicolet stock was not "an equity security issued by a corporation which [had the characteristics of a small business] at the time of acquisition by the taxpayer . . . ." (§ 18162.5, subd. (e).) It follows the exception does not apply to the taxpayers' sale of Nicolet stock.

B. *The 1981 Merger Did Not Result in a Mere Substitution of Shares.*

The underlying premise of the trial court's decision is that the 1981 merger did not result in an actual exchange of shares, but a mere "substitution" of shares without any change in their basic character. The trial court concluded the exchange resulted in a name change only, and the Nicolet shares were equivalent to the Paratronics shares. We cannot agree.

The trial court erred by focusing on the fact Paratronics continued as a separate business, while ignoring the changed nature of the stock itself. It is true that, after the merger, Paratronics continued to operate as a separate—albeit subsidiary—business. However, the stock the taxpayers received in the merger was not stock in the continuing Paratronics subsidiary *alone*, but stock in the *entire* Nicolet corporation. Thus, while the nature of Paratronics as a business may have remained constant, the nature of the stock the taxpayers held did not. Instead, the taxpayers exchanged their illiquid shares in a small, closely held corporation (Paratronics) for liquid shares in a larger, publicly traded, and more diversified corporation (Nicolet). This was not a mere name change or substitution. The merger resulted in a fundamental change in the character of the stock the taxpayers held. Thus, the taxpayers did not merely change the form of their Paratronics shares, they in fact "acquired" Nicolet shares.

The court reached a similar conclusion in *Knowlton v. C.I.R.* (11th Cir. 1986) 791 F.2d 1506. In *Knowlton*, Dunmovin Corporation obtained shares of duPont before 1954. Also prior to 1954, duPont obtained shares of General Motors stock. In 1963 to 1965 duPont distributed its shares of General Motors to its stockholders—including Dunmovin—as a dividend. The issue was whether Dunmovin had "acquired" the General Motors stock before 1954 within the meaning of Internal Revenue Code section 333(e)(2). (*Knowlton v. C.I.R.*, *supra*, 791 F.2d at pp. 1506-1508.) The *Knowlton* court noted the word "acquired" was not defined in the Internal Revenue Code or its interpreting regulations. The court observed, however, that "in common parlance, one acquires property when one obtains ownership, possession, or control over it. Under this definition, Dunmovin did not 'acquire' the GM stock until it actually received it [as a dividend distribution]. The Tax Court, however, recognized an exception to this ordinary meaning. The term 'acquired' has a meaning different than that used in common parlance when the

'acquired' shares represent no more than a change in form. This occurs when the ' "acquired" shares represent no more than a substitution for, or additional shares of the same type as, shares previously acquired.' " (*Id.* at p. 1508.) The Eleventh Circuit held "that the present transaction constituted more than a mere change in form. Without surrendering anything, Dunmovin was given 24,950 shares of General Motors stock. Since, of course, Dunmovin's ownership of stock in duPont did not represent ownership of any of the assets of duPont [citation], it is obvious that after the transaction, Dunmovin owned something quite different than it had before it received the General Motors stock. This was no mere change in form of the stock held by Dunmovin." (*Id.* at pp. 1510-1511.)

Similarly, in this case, the exchange of Paratronics stock for Nicolet stock was more than a "mere change in form." "[I]t is obvious that after the [merger], [the taxpayers] owned something quite different than [they] had before [they] received the [Nicolet] stock. This was no mere change in form of the stock held by [taxpayers]." (*Knowlton* v. *C.I.R.*, *supra*, 791 F.2d at pp. 1510-1511.)

It is true certain tax-deferred exchanges do not involve anything more than a change in the form of stock previously held. For example, a plan of reorganization, such as "a recapitalization" or "a mere change in identity, form, or place of reorganization of one corporation, however, effected . . ." (Int.Rev. Code, § 368(a)(1)(E) and (F)) may constitute nothing more than a change in form. In these cases, there is "no change of substance in the rights and relations of the interested parties one to another or to the corporate assets." (*Bazley* v. *Commissioner* (1947) 331 U.S. 737, 740 [67 S.Ct. 1489, 1491, 91 L.Ed. 1782, 173 A.L.R. 905].)

However, other tax-deferred exchanges, such as statutory mergers or consolidations (Int.Rev. Code, § 368(a)(1)(A) & (B)), often do involve substantial changes in the rights or relations of the interested parties to one another or to the corporate assets. However, these exchanges are nevertheless categorized as continuous investments for tax purposes on " '[t]he theory . . . that the transaction is merely "a continuance of the proprietary interests in the continuing enterprise under modified corporate form." [Citations.]' " (*Commissioner* v. *Clark*, *supra*, 489 U.S. 726, 741 [109 S.Ct. 1455, 1464].) In other words, when one corporation merges with another, a shareholder in the acquired corporation does not exchange his interest in the acquired corporation for a completely disparate investment such as cash or government bonds. Instead, the shareholder merely exchanges his interest for a proportionate interest in a combined corporate enterprise. Here, taxpayers exchanged their Paratronics shares for Nicolet shares pursuant to a merger as

defined in Internal Revenue Code section 368(a)(1)(A). Thus, this is the sort of transaction described in *Commissioner* v. *Clark*, where the transaction is treated as "a continuance of the proprietary interests in the continuing enterprise under modified corporate form." (489 U.S. at p. 741 [109 S.Ct. at p. 1464].)

While the transaction at issue here represents a continuation of investment, however, it is more than a mere change in the form of the investment. Paratronics did not simply issue new stock to recapitalize the enterprise, go public, change its identity or incorporate in another state. In a reorganization of the sort that occurred here, the nature of the shareholder's investments has changed significantly. The company in which the investor now holds an investment is substantially different from that in which he formerly held an investment. (See, e.g., *Role* v. *Commissioner*, 70 T.C. 341, 350 (1978); Rev. Rul. 76-392, 1976-2 C.B. 249.) Consequently, the Nicolet shares the taxpayers received for their Paratronics shares represent more than a mere " 'substitution for, or additional shares of the same type as, shares previously acquired.' " (*Knowlton* v. *C.I.R.*, *supra*, 791 F.2d at p. 1508.)

We therefore reject the trial court's conclusion that the merger resulted in a mere substitution of shares.

C. *Section 18162.5, subdivision (f).*

Relying on section 18162.5, subdivision (f), taxpayers also contend the test for determining whether stock is "small business stock" when acquired, is different than the test for determining whether stock is small business stock when the stock is sold or exchanged. Although this is true, the test for determining whether stock is small business stock when it is sold or exchanged is *more* onerous than the test at the time of acquisition.

To qualify as small business stock, the stock must meet the definition established in section 18162.5, subdivision (e) at the time of acquisition. However, stock which satisfies that definition at the time of acquisition may still be excluded from treatment as small business stock under section 18162.5, subdivision (f) if it has certain characteristics "in the income year immediately prior to the taxpayer's sale or exchange of the equity security." In particular, stock is excluded from the definition of "small business stock" if, in the year before the sale or exchange, (1) more than 25 percent of the issuing corporation's gross receipts were obtained from rents, interest, dividends or sales of assets; or (2) the issuing corporation was primarily engaged in the business of holding land. In other words, stock which was "small business stock" at the time of acquisition may later be excluded from that

definition if the character of the issuing corporation changes. (*Lennane, supra,* 9 Cal.4th at p. 269, fn.4.)

Here, we have concluded the Nicolet stock was not small business stock even at the time of acquisition. Thus, section 18162.5, subdivision (f) is irrelevant to our analysis.

D. *The Statutory Purpose of the Small Business Exemption Does Not Compel a Different Result.*

Finally, taxpayers contend that exempting the sale of their Nicolet stock from the preference tax would be consistent with the legislative purpose behind sections 17063.11 and 18162.5, subdivision (e).

When the Legislature first enacted section 17063.11 in 1981, it expressly stated its reasons for doing so in the authorizing legislation: "The Legislature finds that a key element of California's economic growth and prosperity over the past several decades has been the founding and expansion of new private businesses. A majority of the increase in private employment in California has come as a result of the willingness of private entrepreneurs to take risks in starting and expanding small companies. Similarly, the willingness of private investors to provide the start-up equity capital for entrepreneurs has been a critical element in the ability of new and small companies to transform ideas into jobs and income in California. [¶] The Legislature finds, however, that state and national tax laws, in an inflationary era, provide insufficient incentive for many investors to risk their savings in new businesses, and excessive incentive to place their savings into nonproductive assets which add nothing to the strength of the economy. The purely speculative returns on such investments as gold, silver, gems, paintings, stamps, and antiques represent the diversion of scarce capital from productive investment."[8] (Stats. 1981, ch. 534, § 1, p. 1903.)

Taxpayers contend that exempting the sale of their Nicolet shares from the preference tax would be consistent with the expressed legislative desire to encourage investment in small businesses in California. Although this is true, we may not ignore the plain language of a statute in order to advance the perceived purpose behind the statute. Had the Legislature wanted to extend the "small business stock" exemption to stock obtained in exchange for small business stock in a tax-deferred merger, it could have easily done

---

[8]In addition to creating tax breaks for investments in small business stock, the Legislature simultaneously increased the portion of gains from the sale of nonproductive assets that was subject to tax as ordinary income. (Stats. 1981, ch. 534, § 4, pp. 1904-1905; former § 18162.5, subd. (c); Sen. Com. on Rev. and Tax., Sen. Bill No. 690 (1981-1982 Sess.).)

so. Instead, the Legislature limited the exemption to the sale of stock issued by a corporation that met the definition of a small business "at the time of acquisition by the taxpayer . . . ." (§ 18162.5, subd. (e).)

The Legislature could have done many things to encourage investment in small business stock, including making all gain from the sale of small business stock tax free. However, we may not speculate as to what the Legislature could have done to forward its legislative purpose, but must look to what the Legislature actually did as expressed in the legislation before us. Here, the Legislature did not expressly apply the "small business stock" exemption to stock acquired in exchange for small business stock in a tax-deferred merger. Since the Legislature did not do so expressly, we may not presume it would have done so had it only given the matter some consideration. If the Legislature wishes to extend the exemption to stock obtained in a tax free merger, it may do so by amending the original legislation.

## III.

### DISPOSITION

The judgment is reversed. Costs to the Tax Board. Taxpayers' appeal from the denial of their request for attorney's fees (A072653) is dismissed as moot. Since we have reversed the judgment in favor of taxpayers, they clearly are not a "prevailing party" within the meaning of Revenue and Taxation Code section 19717 or a "successful party" within the meaning of the private attorney general statute (Code Civ. Proc., § 1021.5).

Phelan, P. J., and Walker, J., concurred.

The petition of plaintiffs and respondents for review by the Supreme Court was denied May 21, 1997.