[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11994

_____

Agency No. 21067-14

CECILE BARKER,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court

_____

(April 27, 2021)

Before LAGOA, HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

Cecile Barker petitions for review of the United States Tax Court's decision

upholding the determination by the Commissioner of Internal Revenue (the "Commissioner") that he owes an income tax deficiency for 2011. After review and with the benefit of oral argument, we affirm.

## I. BACKGROUND

In 2002, petitioner Cecile Barker started an entertainment company, SoBe Entertainment International, LLC ("SoBe"), with $10 million of his own money. SoBe's business was finding musical talent and then recording, producing, and marketing music and videos from its signed talent. Barker owns 95% of SoBe and has been its chief executive officer and managing member since its founding. SoBe has never earned a profit, and its cumulative losses increased from year to year.

For tax purposes, SoBe is a partnership. As a passthrough entity, SoBe pays no income tax, and its losses flow directly through to Barker individually. See I.R.C. §§ 701, 704. For years, Barker reported losses stemming from SoBe on his personal income tax returns. But, in 2011, Barker was the victim of identity theft, and someone else filed a tax return using Barker's Social Security number. As discussed below, Barker did not file his true personal tax return for 2011 until August 2016.

In June 2014 and based on the 2011 fraudulent tax return, the Commissioner issued a notice of deficiency to Barker, pursuant to I.R.C. § 6212. The

2

Commissioner had reconstructed Barker's personal income from third-party sources and determined he owed a deficiency of $1,259,279 in his personal federal income taxes for the year 2011.[1]

## II. PROCEDURAL HISTORY

In September 2014, Barker filed a petition in the Tax Court challenging the Commissioner's notice of deficiency. In 2016, during the Tax Court proceedings, Barker late-filed his true 2011 tax return. Particularly relevant to this petition for review, Barker claimed on his personal 2011 tax return a deduction for a net operating loss ("NOL") carryover of $19,604,416 from SoBe.[2] As a result of that large NOL deduction, Barker's 2011 tax return showed no personal income taxes due from him.

Barker's late-filed 2011 tax return also reported the following income that was not included in the Commissioner's notice of deficiency: (1) $3,375,000 in capital gains; (2) $5,621 in interest; and (3) $100,881 in dividends.

In the Tax Court, Barker filed an amended petition, arguing that he was

---

[1] The notice of deficiency also determined an accuracy-related penalty of $252,090 for Barker substantially understating his income tax liability, but the Commissioner later conceded that penalty.

[2] An NOL is "the excess of the deductions allowed . . . over the gross income." I.R.C. § 172(c). The tax code allows a taxpayer to "carry its net operating loss either backward to past tax years or forward to future tax years in order to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." United Dominion Indus., Inc. v. United States, 532 U.S. 822, 825, 121 S. Ct. 1934, 1936 (2001) (quotation marks and citation omitted).

entitled to offset any income he personally had during 2011 with the NOL of SoBe that carried over from prior years. The Commissioner denied that allegation, and the issue proceeded to trial.[3] Before trial, the parties stipulated that Barker did have $3,375,000 of capital gains in 2011.

## A. Tax Court Trial

At trial, Barker presented evidence to support his claimed NOL deduction from SoBe. Barker introduced SoBe's financial records, including: (1) SoBe's general ledger from 2005–2009; (2) SoBe's bank account statements from 2002–2012; and (3) copies of SoBe's cancelled checks from 2006–2010. The trial record also includes SoBe's partnership tax returns for 2003–2011 and Barker's individual returns for 2005–2011. At the start of trial, the Commissioner stated on the record that he intended to file an amended answer after trial because Barker's late-filed 2011 tax return included additional items of income.

At trial, three people testified: (1) Barker; (2) John McQuagge, SoBe's CFO and controller from 2006–2010; and (3) Stanley Foodman, the accountant who prepared Barker's personal tax returns for 2005–2011 and SoBe's partnership returns for 2006–2009. Relevant here, Barker testified that he personally approved

---

[3]Also at issue before the Tax Court was the Commissioner's determination that SoBe did not qualify as a trade or business for purposes of claiming deductions for business expenses under I.R.C. § 162. The Tax Court disagreed, and the Commissioner expressly abandoned the issue in his brief.

4

SoBe's expenses that were in excess of a few thousand dollars. McQuagge testified that all of SoBe's expenses were recorded by him in the finance program QuickBooks around the time that the expenses were incurred. McQuagge then used QuickBooks to generate SoBe's general ledger.

Some of SoBe's expenses were paid with cash or credit cards. The general ledger listed all expenses and sometimes included a description of the expense. But often the descriptions were as vague as "Expenses" or "Travel."

The general ledger also contained adjusting journal entries. One such adjusting journal entry, used as an example at trial, was a 2009 entry for $3,417,238.48 with the description "Artist Advance." Barker was unable to provide any more granular detail on that $3.4 million expense at trial. Barker acknowledged that he was unable to identify which of the cancelled checks corresponded to that expense.

Similarly, McQuagge did not "know [] the breakdown of [the] $3,417,000," or which checks corresponded to it, and stated, "without having the actual artist's name or what constitutes that, I, I can't really comment further on it." McQuagge testified that there were multiple adjusting journal entries throughout the general ledger, but he was unable to give specifics behind any of them.

Foodman explained how he calculated Barker's 2011 NOL deduction by using the losses reported on SoBe's partnership tax returns and on the Schedules

5

K-1 (Partner's Share of Income, Deductions, Credits, etc.) furnished to Barker by SoBe. No one testified as to how SoBe's partnership tax returns were prepared.

During trial, Barker also admitted to each of the three additional items of income contained in his late-filed 2011 tax return: (1) $3,375,000 in capital gains; (2) $5,621 in interest; and (3) $100,881 in dividends. The Commissioner's original notice of deficiency did not include these three income items.

## B. Commissioner's Amended Answer

Following trial, the Commissioner moved to amend his answer to Barker's amended petition. The Commissioner filed the proposed amendment, which added, among other things, the additional items of income that Barker included in his late-filed 2011 tax return and admitted at trial.

The Commissioner also disputed Barker's entitlement to the NOL deduction of $19,604,416 and sought a late penalty under I.R.C. § 6651 for Barker not filing his 2011 tax return on time. In all, the Commissioner determined that Barker's revised income tax deficiency was $1,807,885.50 and his late-filing penalty was $451,971.38.

The Tax Court later granted the Commissioner's motion to amend his answer. The Tax Court noted that Barker had included those amounts of additional income on his late-filed 2011 tax return and stipulated to them.

6

## C. Tax Court Decision

In May 2018, the Tax Court issued a memorandum opinion upholding the Commissioner's determinations. The Tax Court found that Barker did not substantiate his 2011 NOL deduction of $19,604,416. Among other reasons, the Tax Court found that the only documentation that Barker provided to support SoBe's 2003, 2004, and 2011 business expense deductions were bank statements. "Bank statements," the Tax Court observed, "do not document the amounts of SoBe's expenses paid by cash or credit cards, nor do they describe the business purpose of the expenditure." Although Barker had provided copies of checks, he did so only for the years 2006–2010. And although SoBe's general ledger included payments made by credit cards and cash, Barker provided SoBe's general ledger only for the years 2005–2009.

The Tax Court also found that the witnesses' testimony was "insufficient to fill the gaps." Specifically, the Tax Court found that none of the witnesses testified "about how SoBe's [partnership] tax returns were prepared" and that Barker provided little of the documentation that was used in preparing those returns. Because Barker likely "ha[d] access to additional documentation that would make substantiation possible—at the very least, the general ledger for all of the years of SoBe's existence—and he nonetheless failed to produce it, [the Tax Court] presume[d] that it would be unfavorable to [Barker]."

7

The Tax Court found that the record lacked sufficient evidence upon which it could base even an "estimate of the total amount of SoBe's business expenses for all prior years of operation." The Tax Court found that Barker "failed to substantiate the amounts and the business purpose[s] of SoBe's expenses for—at a minimum—tax years 2003, 2004, 2010, and 2011." Accordingly, the Tax Court concluded that, "if we are not able to estimate the amount of SoBe's operating losses, we cannot know how much flows through to [Barker]."

Moreover, the Tax Court found that, even if SoBe's business expenses had been substantiated, Barker did not produce his own personal tax returns for 2002–2004, and the returns he did produce for 2005–2007 were "missing crucial information, such as the amount of loss that flowed through to him from SoBe, his NOL carryover from previous years, or whether he elected to waive the carryback period."[4] As a result, the Tax Court was "unable to determine what effect [Barker's] tax items or elections in previous years had on his 2011 NOL deduction."

The Tax Court also sustained the Commissioner's determination that Barker was liable for a penalty under I.R.C. § 6651(a)(1) for filing his 2011 tax return late.

---

[4]A taxpayer may elect to waive the carryback period with respect to NOLs to carry forward all of the NOLs for that taxable year. I.R.C. § 172(b)(3). This waiver is irrevocable and must be made on tax returns for the years the net operating losses are incurred. See id.; Treas. Reg. § 301.9100-12T(a), (b)(1), (d).

8

The Tax Court found that Barker's reason for filing late—that he was the victim of identity theft and thought the IRS had to resolve that issue before he filed a true return—did not excuse his late filing because Barker was "a sophisticated businessman and should know that he is required to file his tax return on time."[5]

## D. Rule 155 Computations

Following the issuance of the Tax Court's opinion and pursuant to Tax Court Rule 155, the Commissioner submitted his computations of the proper deficiency and penalty amounts owed by Barker under the Tax Court's opinion. Barker filed objections to the Commissioner's computations.

In his objections, Barker complained that the Commissioner failed to take into account these "items listed on [his] 2011 tax return which were never challenged and were not in issue," and which were unrelated to SoBe: (1) $46,016 in itemized deductions; (2) $2,852,850 in costs of goods sold; (3) $1,010,635 in legal and professional expenses; (4) $780,000 in the cost basis of stock; and (5) $131,515 in other passthrough losses. Barker argued that: (1) he included these five deductions on his late-filed 2011 tax return; (2) these five items offset the additional income asserted by the Commissioner; and (3) at no time during the Tax

---

[5]In his brief, Barker does not argue that his late filing was excused, so we deem any challenge to that issue abandoned. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Court proceeding had the Commissioner "ever give[n] notice that [he] was challenging any of the expenses contained on [Barker's] 2011 individual income tax return." He thus asserted that the Commissioner's Rule 155 computations denied him due process.

In the alternative, Barker requested that the Tax Court reopen the record to introduce additional evidence about those items. In support of his motion, Barker attached several exhibits of new evidence that would substantiate the five unlitigated deductions listed above.

The Commissioner replied that Barker filed his 2011 tax return after the Commissioner had issued the notice of deficiency in this case, and the Commissioner was prohibited from issuing a second notice of deficiency under I.R.C. § 6212(c)(1). The Commissioner also argued that Barker's petition was required to allege any errors he believed were contained in the notice of deficiency. According to the Commissioner, "[n]either the petition nor the amended petition filed in this case place any of the deductions that he now claims [are] at issue in this case."

In a March 11, 2019 order, the Tax Court's decision adopted the Commissioner's computations and implicitly denied Barker's motion to reopen the record. The Tax Court stressed that the Commissioner could not have made adjustments to those five deduction items on Barker's 2011 tax return because

10

Barker filed it after the Commissioner's notice of deficiency. The Tax Court agreed with the Commissioner that Barker had the burden to allege any errors in the Commissioner's deficiency determination and to raise all of his claims in his petition or at trial. Because Barker failed to do so, the Tax Court ruled that his challenges to the Commissioner's computations were new issues that could not be considered under Rule 155. Accordingly, the Tax Court incorporated the Commissioner's computations as the findings of the Tax Court and entered a decision determining an income tax deficiency for 2011 of $1,805,924.50 and a penalty under I.R.C. § 6651(a)(1) of $451,481.13. Barker timely filed this petition for review.

## III. DISCUSSION

In his petition for review, Barker makes three arguments: (1) the Tax Court erred in finding that he failed to prove his entitlement to the NOL deduction of $19,604,416 on his 2011 tax return; (2) the Tax Court abused its discretion by adopting the Commissioner's computations under Rule 155; and (3) the Tax Court abused its discretion by denying his motion to reopen the record. We address each issue in turn.

## A. NOL Deduction

Barker primarily argues that the Tax Court erred by finding that he failed to prove his entitlement to his 2011 NOL deduction of $19,604,416 on his late-filed

11

2011 tax return.[6]

"The Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving otherwise." Tucker v. Comm'r, 841 F.3d 1241, 1249 (11th Cir. 2016). "Additionally, deductions are a matter of legislative grace, and the taxpayer has the burden of proving his entitlement to any claimed deduction." Id. Taxpayers are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability. See I.R.C. § 6001. Importantly, taxpayers cannot rely solely on their own income tax returns to establish the losses they sustained. See Roberts v. Comm'r, 62 T.C. 834, 837 (1974).

To deduct a business expense, a taxpayer must show that the expenses were "directly connected with 'carrying on' . . . [a] business" and that they were "ordinary and necessary" within the meaning of I.R.C. § 162. See Comm'r v. Heininger, 320 U.S. 467, 470, 64 S. Ct. 249, 252 (1943) (addressing former 26 U.S.C. § 23(a), now codified as I.R.C. § 162(a)); see also Treas. Reg. § 1.162-1(a). Section 172 of the Internal Revenue Code allows a taxpayer to deduct NOLs for a

---

[6]We review the Tax Court's "factual findings for clear error and its legal conclusions de novo." Kardash v. Comm'r, 866 F.3d 1249, 1252 (11th Cir. 2017).

taxable year.  I.R.C. § 172.[7]  The amount allowed as an NOL deduction equals the "aggregate of . . . the net operating loss carryovers" prior to the taxable year "plus . . . the net operating loss carrybacks to such year."  Id. § 172(a)(1)-(2).  "It is well settled that [the Tax Court] may determine the correct amount of taxable income or [NOL] for a year not in issue . . . as a preliminary step in determining the correct amount of [an NOL] carryover to a taxable year in issue."  Lone Manor Farms, Inc. v. Comm'r, 61 T.C. 436, 440 (1974).

Here, the Tax Court did not clearly err in finding that Barker failed to substantiate his claimed NOL deduction in 2011.  Although Barker provided a patchwork of documents showing that SoBe incurred expenses, he did not carry his burden to prove that all of the expenses were in fact deductible trade or business expenses, under I.R.C. § 162(a).  For example, as revealed at trial, the general ledger contained largely vague descriptions and numerous adjusting journal entries.  When pressed, neither Barker nor SoBe's former CFO and controller could give a breakdown of a particular $3.4 million adjusting entry or point to checks that corresponded to it.  And with a description of "Artist Advance," they did not even know on which artist the money was spent.

Worse still, Barker did not put the 2003, 2004, 2010, or 2011 general ledgers

---

[7]Because this case relates to Barker's 2011 tax return, all references to I.R.C. § 172 refer to the legislation enacted on Nov. 6, 2009, Pub. L. 111-92, § 13(a), 123 Stat. 2992.

into evidence, despite those ledgers being the only documentation of credit card and cash expenses. The bank statements, which were the only documentation Barker provided for years 2003, 2004, and 2011, had their own gaps because they did not detail the amounts of SoBe's expenses paid by cash or credit cards. Importantly too, the bank statements did not describe the business purpose of each expenditure. The witnesses' testimony did not fill in these gaps, and SoBe's tax returns could not, by themselves, establish those losses. See Roberts, 62 T.C. at 837. Accordingly, Barker has not shown that the Tax Court clearly erred in finding that Barker was unable to substantiate SoBe's losses and therefore, by extension, the Tax Court was unable to calculate the allowable NOL deduction on Barker's personal 2011 tax return.[8]

## B.  Rule 155 Computations

Next, Barker argues that the Tax Court erred in adopting the Commissioner's computations, which he asserts erroneously failed to take into account deductions that he claimed on his late-filed 2011 tax return, but were never

---

[8]As to this issue, Barker makes a new argument that the Tax Court did not hear: the losses experienced by SoBe in 2008–2010 are alone sufficient to erase all of Barker's taxable income in 2011. In the Tax Court, Barker asserted an entitlement to a $19-million NOL deduction. Now, under his new theory, he asserts that he is entitled to carry forward "no less than $7,098,518" on his 2011 tax return. We decline to consider this new theory because it was not raised in the Tax Court. See Finnegan v. Comm'r, 926 F.3d 1261, 1271-72 (11th Cir. 2019).

14

litigated in the Tax Court.[9]

Rule 155 computations are meant to calculate the tax effect of the determinations in the Tax Court's opinion.  See Cloes v. Comm'r, 79 T.C. 933, 935 (1982).  If the parties' computations are not in agreement, the Tax Court has discretion to afford them "an opportunity to be heard in argument thereon."  Tax Ct. R. 155(b).  However, a party may not use Rule 155 computations to seek reconsideration of "the issues or matters disposed of by the Court's findings and conclusions."  Tax Ct. R. 155(c).  And "no argument will be heard upon or consideration given . . . to any new issues."  Id.  Thus, "[t]he Rule 155 computation process is not intended to be one by which a party may . . . raise for the first time issues which had not previously been addressed."  Molasky v. Comm'r, 91 T.C. 683, 685 (1988).

The Tax Court did not abuse its discretion by overruling Barker's objections to the Commissioner's deficiency computations, which included the income, but not the deductions, from Barker's late-filed 2011 tax return.  After Barker late-filed his return, Barker expressly raised the NOL issue in his challenge to the notice of deficiency, but he did not raise an issue as to any of the additional deductions claimed on his return.  Barker had the burden to prove that he was entitled to those

---

[9]We review for an abuse of discretion the Tax Court's decision not to consider a new issue after trial.  See Knowlton v. Comm'r, 791 F.2d 1506, 1511 (11th Cir. 1986).

15

claimed deductions.  See Bone v. Comm'r, 324 F.3d 1289, 1293 (11th Cir. 2003).

Even after trial, when the Commissioner amended his answer to increase the deficiency amount and assert the late-filing penalty, Barker did not raise any issue concerning the additional deductions he claimed on his 2011 tax return.  As a result, those deductions were never litigated.  Instead, he waited to raise the issue until the very end of the case—the Rule 155 computation process—which "is not intended to be one by which a party may . . . raise for the first time issues which had not previously been addressed."  See Molasky, 91 T.C. at 685 (emphasis added); see also Vento v. Comm'r, 152 T.C. 1, 11 (2019) ("Because petitioners' current position would require that we address novel legal questions and (in their view) require that we consider new evidence, it constitutes a 'new issue' within the meaning of Rule 155(c).").

Notably too, Barker attached exhibits to his Rule 155 objections that contained evidence to substantiate these unlitigated deductions.  The evidence he attached was not already in the record, further demonstrating that this was a new issue.  Barker offered no explanation that would excuse his failure to raise it earlier.  See Knowlton v. Comm'r, 791 F.2d 1506, 1511-12 (11th Cir. 1986).  Accordingly, the Tax Court did not abuse its discretion by declining to consider his arguments regarding the five deductions contained in his late-filed 2011 tax return

16

but otherwise never litigated.[10]

## C. Motion to Reopen

Alternatively, Barker argues that the Tax Court should have reopened the trial record to allow him to introduce evidence that substantiated those five unlitigated 2011 deductions.[11]  This argument fails for similar reasons.  Rule 155 computations "cannot be used to reopen the evidence . . . ."  Erhard v. Comm'r, 46 F.3d 1470, 1480 (9th Cir. 1995).  Barker waited until the end of his case to raise this new issue.  He "cannot get a do-over by raising [a] new issue[] in [his] Rule 155 computations."  See Vento, 152 T.C. at 11.  Thus, we cannot say that the Tax Court abused its discretion in refusing to reopen the case to litigate an issue that Barker never attempted to raise.[12]

---

[10]To the extent that Barker argues that he was denied due process when the Commissioner increased his deficiency without considering the unlitigated deductions, his argument is meritless.  As discussed above, Barker—not the Commissioner—had the burden to prove his entitlement to those deductions, but he never tried to prove them.  See Bone, 324 F.3d at 1293.  Conversely, the Commissioner stated on the record before trial that he was going to amend his answer after trial to include certain income, and Barker stipulated to the additional income included in the amendment.

[11]We review for an abuse of discretion a Tax Court's decision not to reopen the record. See Estate of Byrd v. Comm'r, 388 F.2d 223, 234-35 (5th Cir. 1967); see also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all Fifth Circuit decisions issued before October 1, 1981).

[12]To the extent Barker relies on Stivers v. Comm'r, 360 F.2d 35, 40 (6th Cir. 1966), his reliance is misplaced.  This case is plainly and materially distinguishable from Stivers because the taxpayers there did not wait until the Rule 155 proceeding to try to reopen the case with new arguments, and those taxpayers sought to add evidence to the record that had been available in the courtroom at trial.  See id.

17

## IV.  CONCLUSION

For the foregoing reasons, Barker has not shown reversible error in the decision of the Tax Court, and we thus must affirm.

**AFFIRMED.**