FILED
United States Court of Appeals
Tenth Circuit

October 26, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

LARRY D. KLAAS; LISA G.
KLAAS,

        Petitioners-Appellants/
        Cross-Appellees,

    and

APEX INSURANCE COMPANY,
an Anguilla British West Indies
corporation,

        Petitioner-Appellee,

    v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent-Appellee/
        Cross-Appellant.

Nos. 09-9012, 09-9013 & 09-9014

---

### APPEAL FROM THE UNITED STATES TAX COURT
(T.C. Nos. 19803-06 and 16774-06)

---

David E. Ross II, Park City, Utah, for Petitioners-Appellants/Cross-Appellees and Petitioner-Appellee.

Deborah K. Snyder, Attorney, Tax Division, Department of Justice, Washington, D.C. (John A. DiCicco, Acting Assistant Attorney General, and Richard Farber, Attorney, Tax Division, Department of Justice, Washington, D.C, with her on the brief), for Respondent-Appellee/Cross-Appellant.

Before **BRISCOE**, Chief Judge, **McKAY**, and **HARTZ**, Circuit Judges.

**McKAY**, Circuit Judge.

Appellants Larry and Lisa Klaas appeal the decision by the United States Tax Court upholding the Commissioner's assessment of income tax deficiencies against the Klaases for the taxable year 2001.[1] The sole issue on appeal is whether the Tax Court abused its discretion by determining a tax deficiency based on a legal theory raised in the Commissioner's post-trial brief.[2] Since the Klaases failed to show the Tax Court how they were prejudiced by the Commissioner's introduction of the late theory, we hold that the Tax Court did not err by deciding the case based on the Commissioner's post-trial argument.

## BACKGROUND

From December 1999 to November 2001, Mr. Klaas owned Silver Spur RV Park through Silver Spur Holdings, a limited liability company whose sole shareholder was Klaas Development, Inc. ("KDI"), an S corporation.[3] Mr. Klaas

---

[1] Mrs. Klaas is a party only because she filed joint income tax returns with Mr. Klaas for 2001 and 2002.

[2] To avoid a possible "whipsaw" in the event the Klaases prevailed in this appeal, the Commissioner filed a protective cross-appeal to preserve two alternative theories of liability against the Klaases. Because we affirm the Tax Court's decision, there is no need to consider the Commissioner's cross-appeal.

[3] Since Silver Spur Holdings had only a single member, KDI, it is

(continued...)

-2-

was, in turn, KDI's sole shareholder.

On October 8, 2001, Mr. Klaas incorporated Apex Insurance Company ("Apex") as a controlled foreign corporation with the intent of qualifying Apex for tax-exempt status under section 501(c)(15) of the tax code. Mr. Klaas is the sole shareholder of Apex.

That same day, Mr. Klaas executed an Agreement and Plan of Merger between KDI and Apex. According to the Plan, at the effective time of merger KDI's assets and liabilities would merge into Apex, KDI would cease to exist, and Apex would remain as the surviving entity. The merger's effective time was defined as "the date and time the Articles of Merger are filed in the office of the Secretary of State of the State of Washington." (Doc. 8, Exhibit 23-J, at 2.) KDI and Apex filed the merger documents with the State of Washington on March 1, 2002.

On November 13, 2001, Mr. Klaas sold Silver Spur for $8,000,000. Mr. Klaas signed all sale documents and filings as president of KDI, Silver Spur Holding's sole member. Apex was not mentioned in any document related to the sale. The sale proceeds were deposited into KDI's bank account. KDI then wired the proceeds to Apex.

---

[3](...continued)
disregarded as an entity separate from its owner. *See* 26 C.F.R. 301.7701-3(b). Thus, its income and expenses were to be reflected on KDI's tax returns.

In July 2002, KDI filed a short-year 2001 tax return.  It reported that Apex and KDI approved the plan of merger on October 8, 2001, but it did not report the sale of Silver Spur.  The Klaases also did not report the sale of Silver Spur on their 2001 joint return.

In June 2002, Apex filed an election to be treated as a U.S. domestic insurance company for 2001.  In August 2002, Apex applied to be recognized as a tax-exempt entity under Section 501(c)(15) of the tax code.  In October 2002, Apex reported the 2001 sale of Silver Spur and stated total revenues of $5,130,877.  Apex claimed that the sale was not subject to tax because Apex was a tax-exempt insurance company.

In October 2005, the Commissioner issued a final determination that Apex did not qualify for tax-exempt status under section 501(c)(15).  In June 2006, the Commissioner issued a Notice of Deficiency against the Klaases, which determined an income tax deficiency of $2,241,548 for 2001.[4]  The Klaases then filed a petition for rehearing with the Tax Court.

In the Commissioner's pre-trial memorandum and in statements made at trial, the Commissioner argued, along with several alternative theories, that the sale of Silver Spur was a sham or step transaction.  In his post-trial brief, the

---

[4] As a protective measure, the Commissioner also issued alternative notices of deficiency to Apex for 2001 and Mr. Klaas for 2002, neither of which are the subject of this appeal.

Commissioner asserted, in addition to the original theories, that KDI had not yet merged with Apex by the date of sale, and thus the gain from the sale was taxable to Mr. Klaas as the sole owner of KDI. In support of his argument, the Commissioner cited to the Plan of Merger, the stipulation of facts indicating that Mr. Klaas's contribution of KDI stock to Apex was executed pursuant to the Plan of Merger, the November 13, 2001 sale documents listing KDI as Silver Spur's sole member, and the March 1, 2002 Plan of Merger filing date.

In response, the Klaases did not dispute the Commissioner's merger theory but rather argued that the Tax Court could not consider new theories raised by the Commissioner in a post-trial brief. The Klaases further claimed on the merits that Mr. Klaas had contributed his KDI shares to Apex on October 8, 2001, as a capital contribution, not pursuant to a plan of merger.

Based on the stipulation of facts, accompanying exhibits, and trial testimony, the Tax Court found that KDI had not yet merged into Apex at the time of the sale, and therefore any gain from the sale was realized by KDI's sole shareholder, Mr. Klaas. The court also found based on the stipulation of facts that Mr. Klaas had transferred his KDI stock to Apex pursuant to the plan of merger, not as a contribution independent from the merger.[5]

The Tax Court also dismissed the Klaases' claim of surprise and prejudice,

[5] According to the stipulation of facts, "Mr. Klaas transferred all of his shares in KDI to Apex pursuant to the Plan of Merger, below." (Doc. 8 at 9.)

finding that regardless of which theory the Commissioner raised, "the issue is which entity owned Silver Spur on the date of sale." (Doc. 17 at 21.) Thus, the court reasoned, the Klaases "should have known that the date of the merger relative to the date of the sale was at issue." (*Id*.) Moreover, the court noted that the Klaases failed to argue that the record before the court contained insufficient facts to permit the court to either decide the effective date of the merger or consider the Commissioner's new argument.

## DISCUSSION

We review the Tax Court's factual findings for clear error. *Cox v. Comm'r*, 514 F.3d 1119, 1123 (10th Cir. 2008). As in other circuits, we review the Tax Court's decision to consider an issue first raised after trial for abuse of discretion. *Centel Comms. Co. v. Comm'r*, 920 F.2d 1335, 1340 (7th Cir. 1990) (citing *Knowlton v. Comm'r*, 791 F.2d 1506, 1511 (11th Cir. 1986)); c*f. Kurzet v. Comm'r*, 222 F.3d 830, 843 (10th Cir. 2000) (decision to allow a party to raise an issue for the first time at trial is reviewed for abuse of discretion).

A party may not raise a new issue on brief where consideration of the issue would surprise or prejudice the opposing party. *Smalley v. Comm'r*, 116 T.C. 450, 456 (2001). The key issue in a prejudice inquiry is whether the Commissioner's failure to give notice, in the notice of deficiency or in the pleadings, of his intent to rely on a particular theory prejudiced the taxpayer's ability to prepare its case. *Pagel, Inc. v. Comm'r*, 91 T.C. 200, 211-12 (1988),

-6-

*aff'd*, 905 F.2d 1190 (8th Cir. 1990). Of key importance in evaluating the existence of prejudice is the amount of surprise and the need for additional evidence on behalf of the party opposed to the new position. *See id.* at 212 (finding no prejudice where all evidence necessary for a legal determination was already contained in the record); *Philbrick v. Comm'r*, 27 T.C. 346, 353 (1956) (Commissioner may not raise a new issue after the trial where neither the stipulation of facts nor the Commissioner's opening statement at trial suggested the new issue.).

Assuming, without deciding, that the Commissioner's merger theory is indeed a new issue, to prevail on appeal the Klaases must have presented to the Tax Court some showing of prejudice such that a failure of proof by the Klaases on the date-of-merger issue "was caused by the failure of the Commissioner to stick to the theory announced by him in his notice of deficiency." *Boe v. Comm'r*, 307 F.2d 339, 342 (9th Cir. 1962). However, the Klaases did not explain to the Tax Court how they were prejudiced, nor did they provide an offer of proof in rebuttal to the Commissioner's merger theory. Instead, their answer brief states only that the court's use of the new theory "does in fact prejudice Petitioners in that Petitioners at this stage of the proceedings are unable to produce evidence and legal argument to defend." (Doc. 16 at 7.) The Klaases repeated this assertion later in their brief: "Petitioner[s are] prejudiced in that they are unable to present evidence in rebuttal and unable to present opposition

-7-

argument supported by such evidence." (*Id*. at 26.)  There is no mention of particular facts, witnesses, or arguments, the absence of which would make legal determination of the date-of-merger issue prejudicial to the Klaases.

The Klaases now argue on appeal that the evidence they would have presented in rebuttal "would be primarily in the form of testimony by the several professionals that have relevant knowledge and were involved in the merger between Apex and KDI in October 2001." (Pet'rs' Br. at 20.)  They specify one witness in support of this claim, Michael Bishop, who testified at trial but did not testify as to the merger issue because "it had been stipulated to and therefore there was no need." (*Id*. at 21.)  However, the Klaases did not mention Mr. Bishop in their briefs to the Tax Court.  Furthermore, given the lack of details provided by the Klaases, it is unclear to this Court what assistance, if any, Mr. Bishop's further testimony would have provided to the Klaases' argument.  According to the stipulation of facts and accompanying exhibits, Mr. Klaas transferred shares from KDI to Apex pursuant to the Plan of Merger.  Under the Plan's terms, KDI should have ceased to exist upon the date of merger, yet KDI—not Apex—was listed on all the sale documents for Silver Spur.  Given these stipulated facts, the Klaases would have difficulty arguing that the merger occurred before the sale.  We cannot deduce how Mr. Bishop's further testimony would help prove this claim.

At its core, the notice of deficiency asserted an income tax deficiency

against Mr. Klaas because he failed to claim the capital gain realized from the sale of Silver Spur, through various corporate entities, to him. At the time of the sale KDI owned Silver Spur. The argument from start to finish has consistently been over who owned KDI. All of the evidence needed to make this determination was already in the record. *See Smalley*, 116 T.C. at 457.

## CONCLUSION

Under these circumstances, we hold that the Tax Court did not abuse its discretion by considering the Commissioner's date-of-merger theory. Therefore, the decision is **AFFIRMED**.