FILED
United States Court of Appeals
Tenth Circuit

July 24, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARION J. WELLS,

     Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

     Respondent - Appellee.

No. 18-9007
(CIR No. 13889-14)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Marion J. Wells appeals an Order and Decision of the United States Tax Court

computing her tax deficiencies for 2010 and 2011. In a memorandum opinion, the

Tax Court disallowed business deductions she sought under § 162 of the Internal

Revenue Code (I.R.C.) but permitted Wells to depreciate a portion of those

disallowed expenses. The Tax Court later entered the Order and Decision denying

her motion for reconsideration and adopting the Commissioner's deficiency

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

calculation. Wells appeals the Tax Court's denial of bonus depreciation. She also challenges the Tax Court's treatment of certain expenses as non-deductible personal expenses. Exercising jurisdiction pursuant to 26 U.S.C. § 7482, we affirm.

## BACKGROUND

### Pretrial Filings and Memoranda

In 2014 the Commissioner issued Wells a notice determining deficiencies in her individual Federal income tax of $66,178 for 2010 and $9,802 for 2011. The deficiencies arose from disallowed business expense deductions for work performed on her agricultural property in Garfield County, Colorado. In the notice, the Commissioner offset some of the disallowed deductions by permitting Wells to claim increased depreciation.

Wells filed a tax court petition seeking a redetermination of the deficiency. In her petition she accepted the Commissioner's calculation of increased depreciation, stating, "[n]o error is assigned to the Commissioner's determinations to increase Petitioner's Schedule F1 depreciation and Section 179 deduction in the amounts of $9,952.00, and $21,289.00, for [the 2010 and 2011 tax years]." Aplt. App. at 6.

The parties filed pretrial memoranda. Wells identified the pertinent issue as whether the Commissioner had incorrectly recharacterized repair and maintenance expenses for tax years 2010 and 2011 as capital improvements. The Commissioner

2

stated the issue similarly.[1] The parties did not list the calculation of depreciation as an issue for trial.

Prior to trial the parties reached an agreement limiting the scope of the issues. During a pretrial hearing involving a subpoena duces tecum issued to a non-party, Wells' counsel suggested a stipulation that "if we establish that . . . this was not capital, then we win the deduction." *Id.* at 170. The Commissioner's counsel responded that so long as Wells did not seek an alternative loss deduction under I.R.C. § 165, the Commissioner would not seek to reduce the depreciation adjustment he had already conceded to Wells.

**Tax Court's Memorandum Opinion**

The Tax Court held a trial and issued its Memorandum Findings of Fact and Opinion. Its findings may be summarized as follows.

Wells owns and lives on a 265-acre agricultural property in Garfield County, Colorado. On the northern end of this property she cultivates grapevines, whose grapes she crushes for juice that she sells to local buyers. She also leases a portion of the southern part of the property for horse and cattle grazing.

In 2010 Wells hired Robert Schwartz to perform projects on the property. She paid him "$198,207 for labor, equipment, and materials costs" for "work on, or relating to, [her] private roads; work on the spring line [an underground pipe leading

---

[1] The parties also identified issues concerning an accuracy-related penalty and the Tax Court's standard of review; the rulings on those issues are not contested as part of this appeal.

3

from a spring on the southern part of the property to other areas of the property];

digging holes for new grape vines; spreading manure; and construction of a storage

yard." *Id.* at 55. She also hired a fencing company to reset fences after the spring

line and storage yard work, paying them $824.30 for their fencing work.

In 2011 Wells paid Schwartz an additional $47,630 to rehabilitate an area of

the property that had burned in 2007. Schwartz removed burned tree stumps and

boulders and turned the soil so that the burned area could be used for forage.

Wells' position at trial was that the work performed on her property in 2010

and 2011 represented deductible repair or maintenance to existing structures or

improvements, rather than replacements of those features or "new" construction. But

the Tax Court determined that most of the expenses were not deductible. The 2010

spring line expenditures had to be capitalized because the replacement of the spring

line was not a deductible "repair" but was instead "part of a general plan of

rehabilitation, modernization, and improvement to completely replace the spring line

. . . the costs of which must be capitalized." *Id.* at 66 (internal quotation marks

omitted). The Court similarly denied a deduction for replacement of an access road

damaged by flooding on the property, reasoning that "[b]y petitioner's own

admission . . . the work done on the access road was a complete replacement of that

portion of the road . . . from the south field to below the spring [that] must be

capitalized." *Id.* at 75. The money Wells spent on construction of the storage yard

and related fencing was "new construction on top of previously unimproved land"

and "necessarily an improvement, and consequently the costs must be capitalized."

4

*Id.* at 77 (internal quotation marks omitted).  The Tax Court did allow a § 162 deduction of $9,000 for repair of a culvert, tree cutting, and manure spreading.[2]

The Tax Court determined that the 2011 work involving the burn rehabilitation area was part of a plan of rehabilitation that must also be capitalized.  It therefore sustained the Commissioner's determination that Wells could not deduct any of the $47,630 for 2011 disallowed in the notice of deficiency.[3]  Finally, the Tax Court acknowledged the Commissioner's allowance of additional depreciation for tax years 2010 and 2011.

**Tax Court's Order & Decision**

Wells moved for reconsideration under Tax Court Rule 161.  In her motion she argued, for the first time, that to the extent the Tax Court had determined that she had incurred capital improvement expenses that constituted new construction she was entitled to "bonus depreciation."  Her argument relied on I.R.C. § 168, which allowed

---

[2]    The Tax Court completed its examination by reviewing certain invoices Wells submitted related to work performed in 2010, and determined that § 162 deductions were unavailable for most of the expenses described.  It determined that (1) excavation to set a new grade around a garage near Wells' father's house was a capital improvement to the garage, and also likely a non-deductible personal expenditure; (2) expenses for digging holes for grape plants must be capitalized; (3) no evidence showed that work done for "driveways" was for anything other than Wells' personal driveways; (4) work done for road maintenance around a newly constructed barn was part of the barn construction project, and hence a capital improvement; and (5) there was insufficient evidence to determine deductible expenses with regard to an access road known as Kuiper Road.

[3]    The Tax Court rejected a penalty the Commissioner had assessed under I.R.C. § 6662(a) based on the 2010 underpayment.  That penalty is not at issue in this appeal.

a taxpayer to depreciate "qualified property" acquired after December 31, 2007, and before January 1, 2013, by an additional amount in its first year of use.  *See* I.R.C. § 168(k)(1)(A) (2011).  This special allowance is referred to colloquially as "bonus depreciation."

Wells stated she was "not attempting to bring the issue of bonus depreciation before the Court," but merely sought "clarification" concerning two of her expenses. Aplt. App. at 97.  First, she asked the Tax Court to make a specific determination that she spent $16,859.30 for storage yard construction in 2010.  Second, she challenged the Tax Court's finding that the 2010 road maintenance expenses were for her personal driveways (and hence, non-depreciable).  The Commissioner opposed her motion for reconsideration.

Before the Tax Court ruled on the motion, the parties further explored the bonus depreciation issue in their Computations for Entry of Decision filed pursuant to Tax Court Rule 155(b).[4]  In her Computation, Wells claimed bonus depreciation for her new storage yard, road maintenance expenses around the barn, and 2011 expenses relating to the burn rehabilitation area.  She asserted that because the Tax Court had found these expenses were for new construction she was automatically entitled to bonus depreciation under I.R.C. § 168.  As a result, by contrast with the

_____

[4] Rule 155(b) provides that "[i]f the parties are not in agreement as to the amount to be included in the decision in accordance with the findings and conclusions of the Court, then each party shall file with the Court a computation of the amount believed by such party to be in accordance with the Court's findings and conclusions."

Commissioner's allowed depreciation deductions totaling $9,952 for 2010 and $20,434 for 2011,[5] she calculated depreciation deductions of $35,265 for 2010 and $63,106 for 2011.

In his Computation, the Commissioner argued that I.R.C. § 168(k) only permits bonus depreciation for "qualified property." He contended Wells had failed to explain how the burn rehabilitation area qualified under § 168(k). He further argued that her arguments were untimely and she had waived them by failing to raise them previously.

The Tax Court issued an Order and Decision denying Wells' motion for reconsideration and adopting the Commissioner's computations. It found she had raised "new issues, which would require reopening the record for presentation of additional evidence." Aplt. App. at 153. The Tax Court further reasoned that Wells had fair notice of, and an opportunity to dispute, the Commissioner's depreciation adjustment, but she had failed to raise any dispute concerning this issue or to present evidence concerning it at trial. It therefore found that issue waived. The Tax Court adopted the Commissioner's calculations and determined deficiencies of $63,028 for 2010 and of $10,101 for 2011.

---

[5] The allowed 2011 depreciation deduction decreased slightly from the figure used in the notice of deficiency because the Tax Court had authorized $9,000 in additional deductions under § 162.

## DISCUSSION

"We review tax court decisions in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. The Tax Court's legal conclusions are subject to de novo review, and its factual findings can be set aside only if clearly erroneous." *Petersen v. Comm'r*, 924 F.3d 1111, 1114 (10th Cir. 2019) (internal quotation marks omitted). We review for an abuse of discretion the Tax Court's adoption of the Commissioner's Rule 155 computation, *see Powell v. Comm'r*, 581 F.3d 1267, 1269 (10th Cir. 2009); its denial of Wells' Rule 161 motion for reconsideration, *see Am. Stores Co. v. Comm'r*, 170 F.3d 1267, 1270 (10th Cir. 1999); and its waiver determination, *see Klaas v. Comm'r*, 624 F.3d 1271, 1273 (10th Cir. 2010).

### 1. Bonus Depreciation

Wells presents two challenges to the Tax Court's denial of bonus depreciation. She argues, first, that bonus depreciation is not a new issue in the case because it (1) requires only a mathematical calculation; (2) is mandatory; and (3) was fully supported by the Tax Court's findings, the parties' stipulations, and the evidentiary record developed at trial. Second, she argues she did not waive the bonus depreciation issue, because her opportunity to present the issue did not arise until the Tax Court adopted the Commissioner's trial position that certain disallowed items constituted new construction.

8

## A. New Issue

A motion for reconsideration is not the appropriate forum for tendering new legal theories to the Tax Court. *Estate of Quick v. Comm'r*, 110 T.C. 440, 441-42 (1998). Nor are parties permitted to raise "new issues" in connection with their Rule 155 computations, though they may address "purely mathematically generated computational items" that are "automatically trigger[ed]" by adjustments made in the Tax Court's decision. *Home Grp., Inc. v. Comm'r*, 91 T.C. 265, 268-69 (1988), *aff'd*, 875 F.2d 377 (2d Cir. 1989); *accord DeNaples v. Comm'r*, 674 F.3d 172, 180 (3d Cir. 2012).

Contrary to Wells' argument, the bonus depreciation issue was not simply a matter of mathematical computation. The initial decision of *whether* bonus depreciation applies (as opposed to calculation of the *amount* of such depreciation) involves a fact-intensive inquiry into whether the property to be depreciated meets the statutory criteria:

(1) the property to be depreciated must have a recovery period of 20 years or less, or be computer software, water utility property, or qualified leasehold improvement property;

(2) its original use must have commenced with the taxpayer after December 31, 2007;

(3) it must have been acquired by the taxpayer after December 31, 2007, and before January 1, 2013 (except in certain circumstances involving written binding contracts for its acquisition); and

9

(4) it must generally have been placed in service by the taxpayer before January 1, 2013.

I.R.C. § 168(k)(2)(A) (2011).

As Wells acknowledges, bonus depreciation is available only when these criteria have been met. *See* Aplt. Opening Br. at 18-19 (citing I.R.C. § 168(k)(2)). Because the criteria require specific factual findings, the bonus depreciation issue is not purely mathematical. The Tax Court therefore did not abuse its discretion by failing to categorically exempt this issue on purely computational grounds from Rule 155's "new issue" bar.

Wells further argues that irrespective of the "calculation" issue the Tax Court abused its discretion by declining to consider bonus depreciation. She contends application of bonus depreciation is mandatory once the statutory requirements are met. She cites I.R.C. § 168(k)(1)(A), which provides that the depreciation deduction for qualified property "*shall* include an allowance equal to 50 percent of the adjusted basis of the qualified property" (emphasis added).

"Shall" as used in this context appears to refer to what is *allowed* or *included* as a benefit to the taxpayer, rather than a mandate directed at the Tax Court. *See* Treas. Reg. § 1.168(k)-1 (referring to "additional first year depreciation deduction *allowable*" under section 168(k)). But even if we read § 168(k) to mandate the use of bonus depreciation in Tax Court proceedings, Wells fails to establish that this alleged mandate requires the Tax Court to consider issues that have not been properly

presented to it.[6] Wells does not argue, for example, that if the issue of bonus depreciation had *never* been raised, the Tax Court would have been obligated to raise the issue sua sponte and to develop the record on its own initiative to comply with the statutory mandate. *Cf. Jafarpour v. Comm'r*, T.C. Mem. 2012-165, 2012 WL 2122475, at *4 n.13 (June 12, 2012) (holding Commissioner waived any challenge to whether statutory requirements for bonus depreciation were met by failing to challenge the fulfillment of those requirements, noting "it is not the Court's obligation to research and construct the parties' arguments").[7]

---

[6] Wells makes two arguments that only serve to muddy the waters on the waiver issue. First, quoting a dissent from a 1929 Board of Tax Appeals case, she contends her waiver had to be "knowing and intentional." Aplt. Opening Br. at 22. The authority she cites is not binding on us and is inconsistent with the Tax Court waiver principles we have cited, *supra*. Second, she argues, citing Treas. Reg. § 1.168(k)-1(e), that because she never elected out of bonus depreciation as provided in the regulatory procedures, she could not have waived the issue. This confuses a waiver in connection with her Federal tax return with waiver in Tax Court proceedings.

[7] We have implicitly recognized that a taxpayer may waive the proper depreciation method before the Tax Court. In *Kurzet v. Commissioner*, 222 F.3d 830 (10th Cir. 2000), the taxpayers argued to the Tax Court that they should be permitted to change the cost recovery period for a reservoir they had constructed on their timber farm. On their tax return, taxpayers had used a 31.5-year period based on straight-line depreciation. They argued, and the Commissioner conceded, that a 15-year recovery period applied under the then-current Modified Accelerated Cost Recovery System (MACRS). *Id.* at 842. But the Commissioner argued the taxpayers had waived their MACRS argument before the Tax Court, citing "the fact that . . . none of the [taxpayers'] petition, amended petition, or pretrial memorandum referred to this issue and . . . that the [Tax Court] stated during its bench opinion that the court only 'reluctantly' treated the issue as having [been] raised." *Id.* at 843.

In reviewing the depreciation issue in *Kurzet*, we did not intimate that the application of the proper depreciation method could never be waived. Instead, we reached the merits only because we determined the Tax Court did not treat the issue as waived, and instead "elected to treat the question of the recovery based on the

11

That said, had the Tax Court found that the qualifying statutory criteria were met, its refusal to consider an argument for bonus depreciation—even if raised in the first instance in a motion for reconsideration or in Rule 155 proceedings—might be considered an abuse of discretion. *Cf. McLane Co. v. EEOC*, 137 S. Ct. 1159, 1168 n.3 (2017) (a district court "necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law" (internal quotation marks omitted)). But the Tax Court never made the findings required for the application of bonus depreciation.

In the absence of such explicit findings, Wells argues that the parties' stipulation concerning the scope of the issues at trial, coupled with the Tax Court's finding that the improvements were "new construction," *implicitly* satisfied the statutory requirements and thereby triggered the mandatory application of bonus depreciation. The Rule 155 procedure does seek to "compute the redetermined deficiency based upon matters *agreed by the parties* or ruled upon by the [Tax] Court." *Powell*, 581 F.3d at 1271 (emphasis added) (internal quotation marks omitted). But Wells' argument reads too much into the parties' stipulation.

Notwithstanding Wells' references to a "Depreciation Agreement," *see, e.g.*, Aplt. Opening Br. at 22, the pretrial agreement between the parties plainly served only to limit the issues at trial to the question of deductibility versus depreciability. Wells attempts to combine this stipulation with the tax examination changes identified in the notice of deficiency, *see* Aplt. App. at 13-15, in asserting that the

belief that the issue had been tried by consent of the parties." *Id.* The Tax Court made no such determination in this case.

12

Commissioner agreed or conceded that three of the four requirements of § 168(k)(2) were satisfied, *see* Aplt. Opening Br. at 19. But we agree with the Commissioner that the Tax Court was not obliged to find these requirements satisfied. The notice, for example, does not determine that the property has a 15-year recovery period, as Wells claims. At best, the information she cites in the notice of deficiency might bear on the § 168 issues. The Tax Court was not obligated on this record to determine that the Commissioner had conceded or agreed that three of the § 168 criteria were met.[8]

Wells also argues that the bonus depreciation issue should not be considered a new issue because all the facts needed to make the findings concerning it are contained in the record. "Rule 155 does not allow for the introduction of new evidence that was not before the Tax Court in the original proceeding." *DeNaples*, 674 F.3d at 180. But "[t]here is no new evidence if the evidence necessary to resolve a dispute between parties regarding such computations is already in the record or within the scope of the evidence presented in support of issues already pleaded." *Id.* (internal quotation marks omitted).

The Tax Court did not abuse its discretion in determining that the evidentiary record required further development to rule on the bonus depreciation issue. For

---

[8] Wells has attached a Depreciation Lead Sheet as Exhibit B to her reply brief. She asserts that the document contains evidence that the Commissioner determined that three of the requirements of § 168(k)(2) were met. But the document is not part of the record on appeal. In addition, because it was submitted as an exhibit to the reply brief, the Commissioner had no opportunity to make any argument concerning it. We therefore decline to consider this exhibit.

example, the Commissioner had not elicited testimony from Mr. Schwartz to determine the allocation of the amounts on his invoices among the various projects he performed. *See* Aplt. App. at 112-13. As for the burn area, the Tax Court noted Wells' testimony that it could take decades before it would grow forage, which could mean it had not been placed into service as qualifying property under § 168(k). *See id.* at 85. Given the state of the record, the Tax Court did not abuse its discretion in ruling that Wells' issues "would require reopening the record for presentation of additional evidence" and "would require introduction of evidence that could have been introduced at trial." *Id.* at 153.

## B. Waiver

Wells argues she did not waive her bonus depreciation argument because she did not know bonus depreciation could be at issue until the Commissioner raised the issue of new construction at trial and the Tax Court ruled that certain improvements she made constituted "new construction." The force of this argument is somewhat undercut by her position that the Commissioner's notice of deficiency revealed that 75% of the required factors had been satisfied. [9] She does not explain why she could

---

[9] Although Wells argues that requiring her to raise bonus depreciation "at any earlier time before the Tax Court issued its Findings" would require a level of prescience about the fourth, new construction factor that she did not possess, Aplt. Opening Br. at 16, we note the Commissioner's pretrial memorandum states that "Mr. Schwartz . . . described the work as essentially new construction rather than repair. For example, in describing the work done on the irrigation line, Mr. Schwartz explained that items were installed that never existed before and that some pre-existing items were replaced with new items . . . ." Aplt. App. at 32.

14

not have built on this knowledge by making an alternative argument that if the last factor was also satisfied, she should receive bonus depreciation.[10]

But even if it was unfair to require Wells to anticipate that she could argue her improvements met all the requirements for bonus depreciation, in exercising its discretion the Tax Court was entitled to consider any such unfairness in light of several other factors: (1) in her petition, Wells expressed her agreement not only with the Commissioner's allowance of increased depreciation, but with the exact dollar figures the Commissioner specified, *see* Aplt. App. at 6, ¶ 4(a); (2) the parties had agreed prior to trial that they would seek to prove that the expenses were either depreciable or deductible, which limited the scope of issues pursued at trial; (3) even in her motion for reconsideration, Wells did not make a bonus depreciation argument, or present any concomitant discussion of the appropriate standards and factors; and (4) a Rule 155 proceeding is not the appropriate place in which to pursue issues that require additional factual development. We conclude the Tax Court did not abuse its discretion in determining that Wells waived the bonus depreciation issue.

## 2. Personal Expense Determination

Wells also argues that the Tax Court erred in determining that some of her expenses were personal and therefore ineligible for depreciation. She contends that because the notice of deficiency did not raise a personal-expenses issue, and the

---

[10] Wells does not argue that taxpayers cannot make alternative arguments to the Tax Court. *See Schelble v. Comm'r*, 130 F.3d 1388, 1392 (10th Cir. 1997) (addressing taxpayer's alternative arguments, which had been presented to the Tax Court).

parties agreed before trial that repair and maintenance deductions disallowed by the Tax Court would be depreciated, she had no notice that she needed to prove that the expenditures were not for personal items. She complains that the Tax Court rejected entire allocations to specific projects as unreliable because they contained personal expenses, and impermissibly used personal expenses to reject her claims for bonus depreciation.

The Commissioner responds that Wells was not prejudiced by the Tax Court's findings that some of her expenses were personal. He argues that under his Rule 155 calculation, adopted by the Tax Court, she was permitted to keep her depreciation deduction even for the expenses the Tax Court had characterized as personal.

Wells replies that she was in fact prejudiced because in its decision on her Rule 161 motion and Rule 155 computation, the Tax Court rejected bonus depreciation of her 2010 road maintenance expenses based on the personal nature of these expenses.[11] But a review of the Tax Court's order, *see* Aplt. App. at 150-54, shows that it reached its decision based on waiver, and did not discuss whether certain expenses were personal expenditures and therefore ineligible for bonus depreciation.

---

[11] Although in her opening brief, Wells suggests that the "personal expenses" issue adversely affected her ability to immediately deduct certain expenses, *see* Aplt. Opening Br. at 28, she appears to have abandoned this contention in her reply brief, where she focuses exclusively on being deprived of bonus depreciation. *See* Reply Br. at 13 ("[T]he Tax Court seems to have adopted the Commissioner's post trial argument [concerning personal use] and, on that basis, [held] she was not entitled to bonus depreciation.").

16

Wells also complains that the Commissioner continues to argue in its briefing to this court that some of her expenses were personal expenses, thus prejudicing her. But our decision is not based on any comments by the Commissioner relative to personal expenses.

Finally, Wells contends that because she did not have notice that she would have to defend her business use of her assets, the Tax Court's reliance on the personal nature of these assets deprived her of due process of law. This generalized assertion fails in light of her failure to demonstrate prejudice from the Tax Court's decision.

## CONCLUSION

We affirm the Tax Court's Order and Decision.

Entered for the Court

Mary Beck Briscoe
Circuit Judge